MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: mmcgrath@mcrazlaw.com
fpetersen@mcrazlaw.com

By: Michael McGrath, # 6019
Frederick J. Petersen, #19944
76155-1
Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| In re:<br><br>PRM FAMILY HOLDING COMPANY, L.L.C.,<br><br>    Debtor. | Chapter 11 Proceedings<br><br>No. 2:13-bk-09026-SSC |
|---|---|
| In re:<br><br>PRODIGIO MERCADO, L.L.C.,<br><br>    Debtor. | No. 2:13-bk-09028-DPC |
| In re:<br><br>PRO'S ABQ RANCH MARKETS, L.L.C.,<br><br>    Debtor. | No. 2:13-bk-09030-GBN |
| In re:<br><br>PRO'S ELP RANCH MARKETS, L.L.C.,<br><br>    Debtor. | No. 2:13-bk-09033-RJH |

| | |
|---|---|
| In re:<br><br>PRO'S ELP RANCH MARKETS BEVERAGE COMPANY, L.L.C.,<br><br>　　　　Debtor. | No. 2:13-bk-09034-RJH |
| In re:<br><br>PRO & SON'S, L.L.C.,<br><br>　　　　Debtor. | No. 2:13-bk-09036-RJH |
| In re:<br><br>PRO'S RANCH MARKETS (CA), L.L.C.,<br><br>　　　　Debtor. | No. 2:13-bk-09037-GBN |
| In re:<br><br>PROVENZANO'S, L.L.C.,<br><br>　　　　Debtor. | No. 2:13-bk-09039-SSC |

**DEBTORS' EMERGENCY MOTION FOR ORDER GRANTING INTERIM USE OF CASH COLLATERAL AND SETTING FINAL HEARING**

Debtors in possession PRM FAMILY HOLDING COMPANY, LLC, a Delaware limited liability company, PRODIGIO MERCADO, LLC, an Arizona limited liability company, PRO'S ABQ RANCH MARKETS, LLC, a New Mexico limited liability company, PRO'S ELP RANCH MARKETS, LLC, a Texas limited liability company, PRO'S ELP RANCH MARKETS BEVERAGE COMPANY, LLC, a Texas limited liability company, PRO AND SON'S, LLC, a California limited liability company, PRO'S RANCH MARKETS (CA), LLC, a California limited liability company and PROVENZANO'S LLC, an Arizona limited liability company, (collectively referred to as Pro's Ranch Markets or the "Debtors") move this Court pursuant to 11 U.S.C. §§361 and 363 and Rule 4001, Fed. R.

Bank. P. to authorize their use of cash collateral needed to permit them to operate and reorganize. This Motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Michael Provenzano, III filed simultaneously herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

Each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of Arizona on May 28, 2013 (the "Petition Date"). The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.

### II. INTRODUCTION

PRM Family Holding Company, L.L.C., is a Delaware limited liability company. It is and the sole member of the other limited liability company Debtors. Prodigio Mercado, L.L.C. is an Arizona limited liability company that operates three grocery stores numbered 1, 5 and 6 located in Phoenix, Arizona. Provenzano's L.L.C. is an Arizona limited liability company that operates four grocery stores numbered 2, 3, 4 and 7 located in Phoenix, Arizona. Pro's ABQ Ranch Markets, L.L.C. is a New Mexico limited liability company that operates two grocery stores located in New Mexico, one in Albuquerque and one in Las Cruces. Pro's ELP Ranch Markets, L.L.C. is a Texas limited liability company that operates two stores located in El Paso, Texas. Pro's ELP Ranch Markets Beverage Company, L.L.C. is a Texas limited liability company that holds the liquor license for Pro's ELP Ranch Markets, L.L.C. Pro & Son's, L.L.C. is a California limited liability company that holds title to intellectual property owned by the Debtors. Pro's Ranch Markets (CA), L.L.C. is a California limited liability company that acts as the paymaster, manager, internal

wholesaler, oversees trucking and distribution, pays all AP's and provides employees to all of the Debtors' stores.

Collectively the Debtors own and operate 11 retail grocery stores and employ approximately 2,235 full time workers in these stores and other locations.

The Debtors propose to use cash collateral, specifically cash, deposit accounts, credit/debit card payments, inventory, accounts receivable etc., to allow them to continue their business operations during the course of this reorganization. In return for the use of cash collateral, the Debtors will grant the replacement liens on similar collateral generated post petition to the same extent, validity and priority as prepetition liens on Debtors' property. For the reasons more fully set forth below, the Debtors' respectfully request this Court grant this Motion to allow them to continue their normal business operations during the course of this reorganization.

### III. THE FINANCING ARRANGEMENTS WITH LENDERS

On or about August 11, 2006, the Debtors and Bank of America, N.A. ("Bank of America"), as the administrative agent, lender and letter of credit issuer entered into that Certain Credit Agreement as amended from time to time (the "Existing Credit Agreement"). On July 11, 2011, the Existing Credit Agreement was amended and restated in its entirety (the "Amended and Restated Credit Agreement").

The Amended and Restated Credit Agreement anticipated a Revolving Credit Loan, a Term B Loan, Letters of Credit and a Swing Line Loan. Pursuant to the terms of the Amended and Restated Credit Agreement, these obligations were to be secured by, among other things, a pledge of the Debtors' interest in certain personal property collateral.

On May 12, 2012, the Debtors, among others, entered into a First Amendment to the Amended and Restated Credit Agreement (the "First Amendment"). The First Amendment provided, *inter alia,* that Bank of America waived certain Events of Default and it amended the definition of "Applicable Rate" regarding the rate of interest applicable under various

provisions of the Amended and Restated Credit Agreement. On August 13, 2012, the Debtors, among others, and Bank of America entered into a second amendment to the Amended and Restated Credit Agreement (the "Second Amendment"). On September 30, 2012, Bank of America and the Debtors entered into a Forbearance Agreement. This agreement provided, among other things, that Bank of America agreed to forbear from exercising any rights and remedies under the prior loan agreements described above (the "Credit Agreement") until October 30, 2012.

On October 17, 2012, the Debtors and Bank of America entered into a Forbearance Agreement and Amendment to Amended and Restated Credit Agreement (the "Forbearance Agreement"). The Forbearance Agreement provided that, among other things, Bank of America agreed: (i) to forbear until December 31, 2012 from exercising any rights and remedies available under the Credit Agreement; (ii) to provide additional Term B Loans in the aggregate principal amount of $3.3 million; (iii) to amend the Credit Agreement so that the principal amount owed for Term B Loans was increased to $8.3 million; and (iv) the principal amount owed for the Revolving Credit Loans was $39.6 million plus Letter of Credit Obligations. On or about February 13, 2013, Bank of America declared a default under the terms of the Credit Agreement.

The Debtors assert the value of their personal property securing Bank of America's loans pursuant to the terms of the Credit Agreement is substantially less than the amounts owed as of the Petition Date. As a result, Bank of America will not be entitled to accrue interest, costs, fees or other charges post petition on its secured debts pursuant to 11 U.S.C. §506 (c).

As a further impairment, the Debtors have significant obligations owing to PACA and PASA creditors, who based on federal statute, 7 U.S.C. 499a, *et seq*., have trust fund claims against the debtors' inventory, cash and accounts, that are senior to the claims and collateral interests of the Bank.

## IV. THE LAW

The Bankruptcy Code authorizes a debtor in possession to utilize another entity's cash collateral with authorization from the bankruptcy court, so long as the other entity's interest in the cash collateral is adequately protected. In this regard, the Bankruptcy Code provides at 11 U.S.C § 363 as follows:

> (c)(2) The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –
>
> (A)  each entity that has an interest in such cash collateral consents; or
>
> (B)  the Court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
>
> (c)(3) Any hearing under paragraph (2)(b) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor.  If the hearing under Paragraph (2)(B) of this subsection is a preliminary hearing, the Court may authorize such use, sale or lease only if there is a reasonable likelihood the trustee will prevail at the final hearing under subsection (e) of this section.  The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.
>
> ***
>
> (e) Notwithstanding any other provision of this section, at any time, on request of a entity and has an interest in property use sold or leased, or proposed to be used, sold or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest...

Adequate protection is defined in § 361 of the Bankruptcy Code, which provides:

> When adequate protection is required under § 362, 363 or 364 of this title, of an interest of an entity and property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under § 362 of this title, use, sale or lease under § 363 of this title, or any grant of a lien under § 364 of this title results in a decrease in the value of such entity's interest in such property;

> (2) providing to such entity and additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under § 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

## V. ARGUMENT

The whole purpose in providing "adequate protection" is to ensure the creditor receives the value for which the creditor bargained pre-bankruptcy. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). "Adequate protection" is a concept which is decided flexibly on a case-by-case basis. *In re Martin*, 761 F.2d 472 (8th Cir., 1985); *In re Monroe Park*, 17 B.R. 934 (D.C. Delaware 1982). Since "value" is the lynchpin of adequate protection, and since value is a function of many factual variables, it follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re O'Connor*, 808 F.2d at 1397. Thus, the protection afforded a creditor whose cash collateral is permitted by the Bankruptcy Court to be used by a debtor in possession is whatever condition is deemed necessary to provide adequate protection of the creditors' interest. *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 8 96 (Bankr. S.D. Tex, 1995); *In re J.K.J. Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Virginia 1995).

Pursuant to 11 U.S.C. § 361, adequate protection may be provided by a replacement lien. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir., 1994); *In re Beeker Industries Corp*,, 58 B.R. 725, Bankr. S.D.N.Y. 1986).

The Debtors propose to provide adequate protection by granting replacement liens on the new inventory purchased by the Debtors and on the proceeds generated from the sale and use of Bank of America's existing accounts, inventory and other collateral, to the same

nature, extent and priority as the bank enjoyed prepetition.  The granting of replacement liens on new inventory or accounts generated by the Debtors' use of cash collateral is a common method of providing adequate protection.  *In re Wrecclesham Grange, Inc*., 221 B.R. 978, 981 (Bankr. N.D. Florida, 1997); *In re Barkley AAA Investors, Ltd.* 175 B.R. 755 (Bankr. D. Kansas 1994). By granting Bank of America replacement liens, the Debtor will provide adequate protection of the bank's security interest to permit this Court to authorize the Debtors' use of cash collateral in accordance with the requirements of the Bankruptcy Code.

## VI. RELIEF REQUESTED

The Debtors respectfully request that this Court set an emergency hearing to:

1) authorize the Debtors' use of the cash collateral on an interim basis;

2) set a final hearing on the Debtor' use of the cash collateral; and for the entry of a final order authorizing the Debtors' use of cash and equivalents; and

3) for such other and further relief as the Court deems appropriate under the circumstances.

DATED:  May 28, 2013          MESCH, CLARK & ROTHSCHILD, P.C.


By   /s/Frederick J. Petersen, #19944
       Michael McGrath
       Frederick J. Petersen
       Proposed Attorneys for Debtors

366337