FREEBORN & PETERS LLP
Richard S. Lauter, Esq. (Illinois Bar No. 6182859)
Thomas R. Fawkes, Esq. (Illinois Bar No. 6277451)
311 South Wacker Drive, Ste. 3000
Chicago, IL 60606
Telephone: 312.360.6000
Facsimile: 312.360.6520

SCHIAN WALKER, P.L.C.
Dale C. Schian, #010445
Cody J. Jess, #025066
1850 North Central Avenue, #900
Phoenix, AZ 85004-4531
Telephone: 602.277.1501
Facsimile: 602.297.9633
E-Mail: ecfdocket@swazlaw.com

Counsel for the Official Committee of Unsecured Creditors of PRM Family Holding Company L.L.C., *et al.*

and

MESCH, CLARK & ROTHSCHILD, P.C.
Michael McGrath, #6019
259 North Meyer Avenue
Tucson, AZ 85701
Telephone: 520.624.8886
Facsimile: 520.798.1037
E-Mail: mmcgrath@mcrazlaw.com

Counsel for PRM Family Holding Company, L.L.C., *et al.*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PRM FAMILY HOLDING COMPANY, L.L.C., *et al.*,<br><br>Debtors, | Chapter 11<br><br>Case No. 2:13:-bk-09026-BKM<br><br>(Jointly Administered) |
| This Filing Applies to:<br><br>☒ All Debtors<br>☐ Specified Debtors | |

# JOINT PLAN OF LIQUIDATION DATED DECEMBER 30, 2014

## TABLE OF CONTENTS

**ARTICLE I Definitions** .......... 2
**ARTICLE II Unclassified Claims** .......... 9
2.1 **Allowed Administrative Claims** .......... 9
2.1.1 **Allowed Administrative Claims of any Professional Person** .......... 9
2.1.2 **Other Allowed Administrative Expense Claims** .......... 9
**ARTICLE III Designation of Classified Claims and Interests** .......... 9
3.1 **Class 1** .......... 9
3.2 **Class 2** .......... 9
3.4 **Class 3a** .......... 10
3.5 **Class 3b** .......... 10
3.6 **Class 3c** .......... 10
3.7 **Class 4** .......... 10
3.8 **Class 5** .......... 10
**ARTICLE IV Impairment of Classes** .......... 10
4.1 **Impaired Classes of Claims Entitled To Vote.** .......... 10
4.2 **Classes Deemed To Accept the Plan.** .......... 10
4.3 **Classes Deemed To Reject the Plan.** .......... 10
4.4 **Cram Down.** .......... 10
**ARTICLE V Treatment of Claims and Interests** .......... 11
5.1 **Allowed Professional Fee Claims and Other Allowed Administrative Expense Claims.** .......... 11
5.2 **Class 1 Claims**. .......... 12
5.3 **Class 2 Claims.** .......... 13
5.4 **Class 3a Claims.** .......... 14
5.5 **Class 3b Claims.** .......... 14
5.6 **Class 3c Claims.** .......... 14
5.7 **Class 4 Claims.** .......... 14
5.8 **Class 5 Equity Securities.** .......... 15
**ARTICLE VI Treatment of Executory Contracts** .......... 15
6.1 **Contracts Deemed Rejected.** .......... 15
6.2 **Bar Date for Rejection Damages.** .......... 15
**ARTICLE VII Means of Implementation of the Plan** .......... 16
7.1 **Substantive Consolidation of Estates.** .......... 16
7.1.1 **Claims.** .......... 16
7.1.2 **Voting/Approval.** .......... 16
7.1.3 **Non-Effect.** .......... 16
7.2 **Vesting of Assets.** .......... 17

7.3 **Creditor Advisory Board.** ........ 17
7.4 **Cancellation of Equity Securities.** ........ 18
7.5 **Creditor Trust Asset Administration.** ........ 18
7.6 **Conditions to Confirmation.** ........ 18
7.7 **Conditions to Effective Date.** ........ 18
7.8 **Administrative Claims Bar Date.** ........ 19
7.9 **Termination of Committee.** ........ 19
7.10 **Case Administration.** ........ 20
7.11 **Objections to Claims.** ........ 20
7.12 **Filing of Additional Documents.** ........ 21
7.13 **Creditor Trustee's Professionals.** ........ 21
7.14 **INJUNCTION.** ........ 21
7.15 **Discharge.** ........ 22
7.16 **Exculpation and Limitation of Liability.** ........ 22
7.17 **Release for Plan Funding**. ........ 23
7.18 **Quarterly Reports.** ........ 24
7.19 **U.S. Trustee Fees.** ........ 24
**ARTICLE VIII Modification of the Plan** ........ 24
**ARTICLE IX General Provisions** ........ 24
9.1 **Headings for Convenience Only.** ........ 24
9.2 **Notices.** ........ 25
9.3 **Lapsed Distributions.** ........ 25
9.4 **Undeliverable and Unclaimed Distributions.** ........ 25
**ARTICLE X Retention of Jurisdiction** ........ 26

The Official Committee of Unsecured Creditors (the "*Committee*") of PRM Family Holding Company, L.L.C. and its affiliated debtor entities (the "*Debtors*")[1] and the Debtors hereby submit this Joint Plan of Liquidation of PRM Family Holding Company, L.L.C. dated December 30, 2014 (the "*Plan*") under section 1123 of the Bankruptcy Code.

## ARTICLE I

## Definitions

The following terms, when used in the Plan, have the following meanings unless the context otherwise requires:

1.1 "**503(b)(9) Claim**" means a Claim of a Creditor of the kind specified in section 503(b)(9) of the Bankruptcy Code and that was filed by the Bar Date pursuant to the procedures set forth in the Bar Date Order.

1.2 "**Administrative Claim**" means a Claim of a Creditor of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, and includes: (i) actual and necessary costs and expenses incurred by the Debtors after the Petition Date with respect to preserving the Estates and operating the Debtors' business; (ii) any Professional Fee Claims approved by the Bankruptcy Court under section 330 of the Bankruptcy Code that are incurred on or before the Confirmation Date; (iii) all fees and charges properly assessed against the Estates under 28 U.S.C. § 1930; and (iv) all Allowed 503(b)(9) Claims.

1.3 "**Allowed Claim**" or "**Allowed . . . Claim**" means a Claim, proof of which is filed within the time fixed by the Bankruptcy Court, or that has been, or is hereafter, scheduled by the Debtors as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been raised by the Debtors or the Creditor Trustee within the applicable period fixed pursuant to the Plan, or as to which a Final Order allowing such Claim has been entered.

1.4 "**Avoidance Action**" means a claim or cause of action, and the proceeds thereof, against Persons arising under sections 544, 545 and 547 through 550 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Effective Date to prosecute such Avoidance Actions.

---

[1] Collectively, the Debtors and their case numbers are PRM Family Holding Company, L.L.C. (2:13-bk-09026-BKM); Prodigio Mercado, LLC (2:13-bk-09028-BKM); Pro's ABQ Ranch Markets, LLC (2:13-bk-09030-BKM); Pro's ELP Ranch Markets, LLC (2:13-bk-09033-BKM); Pro's ELP Ranch Markets Beverage Company, LLC (2:13-bk-09034-BKM); Pro and Son's LLC (2:13-bk-09036-BKM); Pro's Ranch Markets (CA), LLC (2:13-bk-09037-BKM); and Provenzano's LLC (2:13-bk-09039-BKM).

1.5 "**Bank of America**" means Bank of America, N.A.

1.6 "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

1.7 "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Arizona.

1.8 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.9 "**Bar Date**" means the applicable bar date by which a proof of Claim must be filed, as established by the Bar Date Order.

1.10 "**Bar Date Order**" means that certain *Order Establishing Bar Date To File Claims and Establishing Procedures for § 503(b)(9) Claims* (Docket No. 305).

1.11 "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.12 "**Cases**" means, separately and collectively, the proceeding commenced under chapter 11 of the Bankruptcy Code on the Petition Date, styled *In re PRM Family Holding Company, L.L.C.*, Case No. 2:13-bk-09026-BKM, and each of the following bankruptcy proceedings jointly administered therewith: Prodigio Mercado, L.L.C., Case No. 2:13-bk-09028-BKM; Pro's ABQ Ranch Markets, L.L.C., Case No. 2:13-bk-09030-BKM; Pro's ELP Ranch Markets, L.L.C., Case No. 2:13-bk-09033-BKM; Pro's ELP Ranch Markets Beverage Company, L.L.C., Case No. 2:13-bk-09034-BKM; Pro & Son's, L.L.C., Case No. 2:13-bk-09036-BKM; Pro's Ranch Markets (CA), L.L.C., Case No. 2:13-bk-09037-BKM; and Provenzano's, L.L.C., Case No. 2:13-bk-09037-BKM.

1.13 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.14 "**Causes of Action**" means all claims and causes of action of the Debtors as of the Effective Date, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending in any jurisdiction in which any of the Debtors is a plaintiff, defendant or other party, and all other adversary proceedings and lawsuits, together with all products and proceeds thereof. Causes of Action shall be limited to the Non-Insider Actions and expressly excludes any claims against the Guarantor Released Parties.

1.15 "**Claim**" means any right to payment, other than an Administrative Claim, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

1.16 "**Class**" means a class of holders of Claims as described in the Plan.

1.17 "**CNG**" means CNG Ranch, LLC.

1.18 "**CNG Asset Purchase Agreement**" means that certain asset purchase agreement by and between CNG and the Debtors pursuant to which CNG purchased substantially all of the Debtors' assets.

1.19 "**CNG Secured Claim**" means the portion of CNG's Claim that is a Secured Claim.

1.20 "**CNG Unsecured Claim**" means that portion of CNG's Claim that is an Unsecured Claim.

1.21 "**Committee**" means the Official Committee of Unsecured Creditors appointed in these Cases on July 2, 2013, under section 1102 of the Bankruptcy Code.

1.22 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.23 "**Confirmation Hearing**" means the hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

1.24 "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan.

1.25 "**Creditors**" means all Persons holding Claims against the Debtors.

1.26 "**Creditor Advisory Board**" means the board created pursuant to the Creditor Trust Agreement, which shall have the duties and powers set forth in the Creditor Trust Agreement.

1.27 "**Creditor Trust**" means a common law trust to be established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the holders of Allowed Administrative Claims, Allowed Unsecured Priority Tax Claims, Allowed Class 1 Claims and Allowed Class 3 Claims. The Creditor Trustee shall liquidate and distribute the Creditor Trust Assets, in accordance with the Creditor Trust Agreement.

1.28 "**Creditor Trust Agreement**" means the agreement to be executed as soon as reasonably practicable after the Confirmation Date, which will govern the obligations of the Creditor Trustee with respect to oversight of the liquidation of the Creditor Trust Assets, the distribution of the Net Trust Proceeds of the Creditor Trust Assets and the administration of the Creditor Trust, as further set forth in the Creditor Trust Agreement and the Plan.

1.29 "**Creditor Trust Assets**" means those assets to be transferred to and vested in the Creditor Trust pursuant to the Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time. The Creditor Trust Assets shall include any assets of the Debtors that are held by the Debtors, including, without limitation, all "Excluded Assets" as that term is defined in the CNG Asset Purchase Agreement, the Plan Fund, the Plan Funding Contribution and any and all proceeds from any Avoidance Actions or Causes of Action engaged in by the Creditor Trust, and any and all proceeds thereof.

1.30 "**Creditor Trustee**" means such Person or entity, including any replacements

thereof or successors thereto, as designated in the Plan Supplement on or prior to the Plan Supplement Filing Date and approved by the Bankruptcy Court, as necessary or appropriate, to serve as custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein for the benefit of the holders of Allowed Administrative Claims, Allowed Unsecured Priority Tax Claims, Allowed Class 1 Claims and Allowed Class 3 Claims pursuant to the Plan, the Confirmation Order and the Creditor Trust Agreement.

1.31 "**Creditor Trustee's Expenses**" means the reasonable fees, costs and expenses incurred by the Creditor Trustee and any Professionals retained by it in connection with the performance of its duties and responsibilities under the Plan and Creditor Trust Agreement, as well as any other reasonable and necessary costs of administration of the Creditor Trust, including U.S. Trustee fees incurred during the post-Confirmation Date period, which may be paid from the Creditor Trust Assets.

1.32 "**Creditor Trust Interest**" means the beneficial interest in the Creditor Trust.

1.33 "**Debtors**" means, collectively, PRM Family Holding Company, L.L.C., Prodigio Mercado, L.L.C., Pro's ABQ Ranch Markets, L.L.C., Pro's ELP Ranch Markets, L.L.C., Pro's ELP Ranch Markets Beverage Company, L.L.C., Pro & Son's, L.L.C., Pro's Ranch Markets (CA), L.L.C. and Provenzano's, L.L.C., all as debtors and debtors-in-possession in the Cases.

1.34 "**Disclosure Statement**" means the Disclosure Statement regarding and in support of the Plan that is filed by the Plan Proponents and approved by the Bankruptcy Court.

1.35 "**Disputed Claim**" means any Claim that is not an Allowed Claim.

1.36 "**Distributing Party**" means the party obligated to make any distribution permitted or required under the Plan, whether the Debtors or the Creditor Trustee.

1.37 "**Effective Date**" means the date on which all of the conditions to the effectiveness of the Plan as specified in section 7.9 of the Plan, have been satisfied or waived in accordance therewith. The Effective Date may not be more than 18 months following entry of a final Confirmation Order, unless otherwise ordered by the Court.

1.38 "**Equity Security**" has the meaning provided by section 101(16) of the Bankruptcy Code.

1.39 "**Equity Security Holder**" has the meaning provided by section 101(17) of the Bankruptcy Code.

1.40 "**Estates**" means the estates of the Debtors created in these Cases under section 541 of the Bankruptcy Code.

1.41 "**Executory Contract**" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.42 "**Final Order**" means an order or judgment as to which the time to appeal or seek direct review or rehearing has expired and as to which no appeal or petition for review or

rehearing is pending.

1.43 "**GCC**" means Grocers Capital Company, a subsidiary of Unified Grocers, Inc.

1.44 "**General Unsecured Claim**" means any Unsecured Claim, arising prior to the Petition Date that is not a Professional Fee Claim, Other Administrative Expense Claim, Unsecured Priority Tax Claim, Class 1 Claim, Class 2 Claim, Class 3a Claim, Class 3b Claim, Class 3c Claim, Class 5 Equity Securities or Intercompany Claim.

1.45 "**Guarantors**" means Pro and Sons Holding, Inc., Pro's Ranch Markets Holding, Inc., Michael A. Provenzano, Jr., individually and as trustee of the Survivor's Trust of the Provenzano Family Trust, Michael A. Provenzano, III, individually and as trustee of the MAP III 2003 Grantor Trust and the MAP III 2003 Non-Grantor Trust, Steven R. Provenzano, individually and as trustee of the SRP 2003 Grantor Trust and the SRP 2003 Non-Grantor Trust, Richard S. Provenzano, individually and as trustee of the RSP 2003 Grantor Trust and the RSP 2003 Non-Grantor Trust and Jeffrey C. Provenzano, individually and as trustee of the JCP 2003 Grantor Trust and the JCP 2003 Non-Grantor Trust.

1.46 "**Guarantor Released Parties"** means the Debtors, the Guarantors, MAPS Acquisition Enterprises, LLC and each of their respective members, managers, trustees, beneficiaries, officers, directors, shareholders, affiliates, professionals, employees, agents, assigns and successors.

1.47 "**Impaired**" means any Class, or any Claim or Interest in a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code, and includes, without limitation, Classes 1, 2, 4 and 5.

1.48 "**Intercompany Claim**" means any Claim held by a Debtor against any other Debtor.

1.49 "**Interest**" means the legal, equitable, contractual and other rights of the holders of any Equity Securities in the Debtors, including the rights of any entity to purchase or demand the issuance of any Equity Securities, including: (i) conversion, exchange, voting, participation and dividend rights; (ii) liquidation preferences; (iii) stock options, warrants and put rights; and (iv) share-appreciation rights.

1.50 "**Lien**" has the meaning provided by section 101(37) of the Bankruptcy Code.

1.51 "**Net Trust Proceeds**" means the proceeds received by the Creditor Trustee from time to time from the sale or other disposition of the Creditor Trust Assets, net of the reasonable or necessary costs of such sale or other disposition, including reasonable fees and expenses of the Creditor Trustee's legal counsel and other Professionals incurred in connection therewith.

1.52 "**Non-Insider Actions**" means a Cause of Action against a Person that is not an insider of the Debtors as defined in section 101(31) of the Bankruptcy Code (including the Guarantors), including, but not limited to, Avoidance Actions.

1.53 "**Other Administrative Expense Claim**" means an Administrative Claim that is not a Professional Fee Claim.

1.54 "**Other Secured Claim**" means a Secured Claim other than the CNG Secured Claim and Secured Tax Claims.

1.55 "**PACA Claims**" means Claims under the Perishable Agricultural Commodities Act.

1.56 "**PASA Claims**" means Claims under the Packers' and Stockyards' Act.

1.57 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.58 "**Petition Date**" means May 28, 2013.

1.59 "**Plan**" means this Joint Plan of Liquidation, together with all exhibits, schedules, and annexes hereto, all as may be modified, supplemented, or amended from time to time.

1.60 "**Plan Fund**" means that remaining portion of the estimated $14,000,000, as part of the purchase price, in Cash that CNG agreed to transfer to the Debtors pursuant to the CNG Asset Purchase Agreement for purposes of making distributions to Creditors pursuant to this Plan. For the avoidance of doubt, the Plan Fund may be less than $14,000,000 due to the Debtors' use of a portion of the Plan Fund to pay certain closing costs of the sale of the Debtors' assets to CNG.

1.61 "**Plan Funding Source**" means the combination of entities or individuals who make the Plan Funding Contribution, by or on behalf of the Guarantor Released Parties.

1.62 "**Plan Funding Contribution**" means $1,600,000 to be contributed, or caused to be contributed, directly or indirectly, by the Plan Funding Source, comprised of cash, forgiveness of post-petition loans to the Estates, and the forgiveness of administrative priority claims against the Debtors purchased post-petition. For purposes of determining the amount of the Plan Funding Contribution, such amount will be calculated based on the purchase price of claims, rather than the face amount of such claims. Amounts spent by the Plan Funding Source in excess of $1,600,000 are not considered a part of the Plan Funding Contribution.

1.63 "**Plan Proponents**" means the Committee and the Debtors.

1.64 "**Plan Supplement**" means the supplemental annex to the Plan consisting of a compilation of documents and forms of documents, schedules and exhibits to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules, including, without limitation, the Creditor Trust Agreement.

1.65 "**Plan Supplement Filing Date**" means the date that is five (5) Business Days prior to the Voting Deadline.

1.66 "**Priority Claim**" means a Claim, other than an Administrative Claim or Priority Tax Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees, such Claims constitute Priority

Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.67 "**Priority Tax Claims**" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code and that is not a Secured Tax Claim.

1.68 "**Pro Rata**" means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included.

1.69 "**Professional Fee Claim**" means a Claim of a Professional Person for compensation for services rendered in these Cases prior to the Confirmation Date under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code, for such Professional Person.

1.70 "**Professional**" or "**Professional Persons**" means Persons, including attorneys, accountants and financial advisors retained by the Debtors, the Committee or the Creditor Trustee, or to be compensated under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code or as set forth in the Creditor Trust Agreement (with respect to Professionals retained by the Creditor Trustee).

1.71 "**Secured Claim**" means a Claim secured by a lien on property of the Estates, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estates, or to the extent of the amount subject to set off, as the case may be.

1.72 "**Secured Creditor**" means the holder of a Secured Claim.

1.73 "**Secured Tax Claim** means a secured Claim of a governmental unit that (a) is senior in priority to the liens and security interests securing the CNG Secured Claim and (b) would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) of the Bankruptcy Code but for the secured status of such Claim.

1.74 "**Unified Grocers**" means collectively Unified Grocers, Inc. and its subsidiary GCC, who provided merchandise to the Debtors pursuant to a Supply Agreement and remained owed approximately $6.3 million and a Loan Agreement in the amount of $8.3 million. The debt owed by the Debtors to Unified Grocers is part of the First Amended and Restated Credit Agreement with Bank of America. Unified Grocers collateral is all Class A, Class B and Class E shares of Unified Grocers, deposits with Unified Grocers and accrued patronage or dairy dividends. In addition, Unified Grocers has a second lien on collateral that was subject to Bank of America's (now CNG's) lien, other than the shareholder or membership interests that Pro's Ranch Market (CA), L.L.C. owned in Unified Grocers, Inc.

1.75 "**Unsecured Claim**" means a Claim not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Code.

1.76 "**U.S. Trustee**" means the United States Trustee.

1.77 "**Voting Deadline**" means the deadline for the submission of acceptances or rejections of the Plan as provided by the order of the Bankruptcy Court approving the procedures for solicitation of votes on the Plan.

**Rules of Interpretation and Computation of Time.** For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (iv) any reference to any entity as a holder of a Claim or Interest includes the entity's successors and assigns; (v) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (ix) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II

## Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not classified under the Plan.

2.1 **Allowed Administrative Claims** include the following:

2.1.1 **Allowed Administrative Claims of any Professional Person** include Allowed Professional Fee Claims.

2.1.2 **Other Allowed Administrative Expense Claims** include the Allowed Administrative Claims of parties other than Professional Persons.

## ARTICLE III

## Designation of Classified Claims and Interests

Under section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1 **Class 1** consists of all Allowed Priority Claims (other than Priority Tax Claims).

3.2 **Class 2** consists of all Allowed Priority Tax Claims.

3.4 **Class 3a** consists of the CNG Secured Claim. CNG has waived the CNG Unsecured Claim in its entirety.

3.5 **Class 3b** consists of the Allowed Secured Tax Claims.

3.6 **Class 3c** consists of the Other Allowed Secured Claims.

3.7 **Class 4** consists of all Allowed General Unsecured Claims.

3.8 **Class 5** consists of the Equity Securities.

## ARTICLE IV

## Impairment of Classes

4.1 **Impaired Classes of Claims Entitled To Vote.** Except as otherwise ordered by the Bankruptcy Court, Class 1, Class 2 and Class 4 are Impaired, and holders of Claims in those Classes are entitled to vote to accept or reject the Plan.

4.2 **Classes Deemed To Accept the Plan.** Class 3a, Class 3b and Class 3c are unimpaired by the Plan, and holders of such Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. The votes of Creditors holding these Claims will therefore not be solicited.

4.3 **Classes Deemed To Reject the Plan.** Holders of Equity Securities in Class 5 will not receive or retain any distribution under the Plan on account of such interests. Under section 1126(g) of the Bankruptcy Code, Class 5 is Impaired and is conclusively presumed to have rejected the Plan, and the votes of holders of Class 5 interests therefore will not be solicited.

4.4 **Cram Down.** The Plan Proponents will request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to each Class that rejects the Plan.

///
///

## ARTICLE V

## Treatment of Claims and Interests

5.1 **Allowed Professional Fee Claims and Other Allowed Administrative Expense Claims.**

5.1.1 Allowed Professional Fee Claims and Other Allowed Administrative Expense Claims (including Allowed 503(b)(9) Claims) will be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all Creditor Trust Assets will be transferred to the Creditor Trust no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Trust Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.1.2 Distributions of the Net Trust Proceeds from the Creditor Trust will be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Professional Fee Claims and Other Allowed Administrative Expense Claims from time to time on dates determined by the Creditor Trustee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) make a distribution on account of Disputed Claims that are Professional Fee Claims or Other Administrative Expense Claims; and (ii) pay the Creditor Trustee's Expenses in full.

5.1.3 No Professional Fee Claims will be paid prior to such Claims becoming Allowed Professional Fee Claims pursuant to Section 7.10 herein, and provided that the Creditor Trust has sufficient Cash to make such distribution(s).

5.1.4 Allowed Professional Fee Claims and Other Allowed Administrative Expense Claims (other than Allowed 503(b)(9) Claims) will be paid in full from the proceeds of liquidated assets by the Creditor Trustee and will be deemed to hold a Creditor Trust Interest on account of its Allowed Administrative Claim.

5.1.5 Pursuant to agreements between the holders of Allowed 503(b)(9) Claims and the Debtors, holders of Allowed 503(b)(9) Claims will receive less than a full payment as may be agreed in writing between the Creditor Trustee and the holder of the Allowed 503(b)(9) Claim. 503(b)(9) Claims held by the Plan Funding Source, or its related parties, up to the $1,600,000 Plan Funding Contribution, will be waived without any payment. Any remaining claims held by the Plan Funding Source, or its related parties, will be pro-rata with other similar priority claims, based on the purchase amount of such claims.

5.2 **Class 1 Claims**.

5.2.1 Allowed Priority Claims will be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, the Creditor Trust Assets will be transferred to the Creditor Trust no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee will liquidate the Creditor Trust Assets, as applicable, and distribute Net Trust Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.2.2 Distributions of the Net Trust Proceeds from the Creditor Trust will be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Priority Claims from time to time on dates determined by the Creditor Trustee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii)

make a distribution on account of Disputed Claims that are Priority Claims or Priority Tax Claims; and (iii) pay the Creditor Trustee's Expenses in full.

5.2.3    Allowed Class 1 Claims will be paid from the proceeds of liquidated assets by the Creditor Trustee and will be deemed to hold a Creditor Trust Interest on account of its Allowed Class 1 Claim.

5.3    **Class 2 Claims.**

5.3.1    Allowed Priority Tax Claims shall be paid in full, in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, the Creditor Trust Assets will be transferred to the Creditor Trust no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee will liquidate the Creditor Trust Assets, as applicable, and distribute the Net Trust Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement. To the extent there is a conflict between these three documents, the Confirmation Order shall control over the other two documents, and this Plan shall control over the Creditor Trust Agreement.

5.3.2    Distributions of the Net Trust Proceeds from the Creditor Trust will be made by the Creditor Trustee in accordance with the Creditor Trust Agreement (and in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code) to the holders of Allowed Priority Tax Claims from time to time on dates determined by the Creditor Trustee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii) make a distribution on account of Disputed Claims that are Priority Tax Claims or Priority Claims; and (iii) pay the Unsecured Creditor Trustee's Expenses in full.

5.4 **Class 3a Claims.** In full and complete satisfaction of Class 3a Claims, the holder of the Allowed Class 3a Claim has received substantially all of the Debtors' assets securing the Class 3a Claim pursuant to the CNG Asset Purchase Agreement. CNG has waived the CNG Unsecured Claim in its entirety.

5.5 **Class 3b Claims.** The Creditor Trust will pay holders of Allowed Class 3b Secured Tax Claims in full and in Cash, or shall surrender the collateral securing their Claim in satisfaction of their Secured Tax Claim, on the later of: (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Allowed Secured Tax Claims; and (iii) such other time as may be agreed in writing between the Creditor Trust and the holder of the Allowed Class 3b Secured Tax Claim.

5.6 **Class 3c Claims.** The Creditor Trust will pay holders of Allowed Class 3c Other Secured Claims in full and in Cash, or shall surrender the collateral securing their Claim in satisfaction of their Other Secured Claim, on the later of: (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Other Allowed Secured Claims; and (iii) such other time as may be agreed in writing between the Creditor Trust and the holder of the Allowed Class 3c Other Secured Claim.

5.7 **Class 4 Claims.** Allowed Class 4 Claims will be paid Pro Rata in accordance with the Creditor Trust Agreement and the Plan. In accordance with the Creditor Trust Agreement, the Creditor Trust Assets will be transferred to the Creditor Trust no later than seven (7) days after entry of the Confirmation Order. The Creditor Trustee will liquidate the Creditor Trust Assets, as applicable, and distribute the Net Trust Proceeds in accordance with this Plan and the Creditor Trust Agreement.

5.7.2 Pro Rata distributions of the Net Trust Proceeds from the Creditor Trust will be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the

holders of Allowed Class 4 General Claims from time to time on dates determined by the Creditor Trustee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii) satisfy all alleged Priority Tax Claims and Priority Claims in full; (iii) make a Pro Rata distribution on account of Disputed Claims that are Class 4 General Unsecured Claims; and (iv) pay the Creditor Trustee's Expenses in full.

5.8 **Class 5 Equity Securities.** Holders of Class 5 Equity Securities will not receive a distribution under the Plan. Upon the Confirmation Date of the Plan, all Equity Securities will be canceled and terminated.

## ARTICLE VI

## Treatment of Executory Contracts

6.1 **Contracts Deemed Rejected.** All Executory Contracts of the Debtors that: (i) are not identified as being assumed in the Plan Supplement; (ii) have not expired by their own terms; or (iii) have not otherwise been assumed prior to the Confirmation Date, will be deemed rejected under section 365 of the Bankruptcy Code on the Effective Date.

6.2 **Bar Date for Rejection Damages.** All proofs of claim with respect to Claims arising from the rejection of Executory Contracts pursuant to Section 6.1 of the Plan must, notwithstanding any other order of the Bankruptcy Court that may provide for a different date, be filed with the Bankruptcy Court not later than thirty (30) days after the Effective Date. The Claims of any Person arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of the Plan that fails to timely file a proof of claim will be discharged under section 1141(d) of the Bankruptcy Code and forever barred from assertion against the Debtors, the Creditor Trust, or their respective assets or Estates.

## ARTICLE VII

## Means of Implementation of the Plan

7.1 **Substantive Consolidation of Estates.**

7.1.1 **Claims.** The Confirmation Order will contain one or more provisions substantively consolidating the Estates into the Estate of PRM Family Holding Company, L.L.C. Upon the Effective Date, and except as otherwise provided in the Plan: (i) any obligation of any Debtor and all guaranties thereof executed by another Debtor or Debtors will be treated as a single obligation and any obligation of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, will be treated and allowed only as a single Claim against the consolidated Debtors and (ii) each Claim against any Debtor will be deemed a Claim against the consolidated Debtors and will be deemed a single Claim against and a single obligation of the consolidated Debtors. Except as set forth in the Plan, such substantive consolidation will not (other than for purposes related to the Plan) cause any Debtor to be liable under the Plan for any Claim for which it otherwise is not liable, and the liability for any such Claim will not be affected by such substantive consolidation. On the Confirmation Date, any Intercompany Claims of Debtors against any other Debtors will be extinguished and cancelled.

7.1.2 **Voting/Approval.** A Creditor's vote to accept the Plan will be deemed such Creditor's agreement to accept, as consideration for any and all Allowed Claims against any and all Debtors, the treatment specified in the Plan and, the treatment of such Creditor's Claim pursuant to the Plan on a non-substantive consolidation basis.

7.1.3 **Non-Effect.** The substantive consolidation effected pursuant to this Section 7.1 will not affect (other than for purposes related to funding distributions under the Plan), (i) the legal and organizational structure of the Debtors; (ii) defenses to any Causes of Action (including Avoidance Actions) or requirements for any third party to establish mutuality

to assert a right of setoff; and (iii) distributions out of any insurance policies or proceeds of such policies.

7.2 **Vesting of Assets.** On the Effective Date, assets of the Estates (including, without limitation, the contribution from the Plan Funding Source, the Plan Fund and all Causes of Action) will be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. All Causes of Action shall survive confirmation and the commencement of prosecution of Causes of Action shall not be barred or limited by any *res judicata* or estoppel, whether judicial, equitable or otherwise, based upon confirmation of the Plan. The Creditor Trustee's right to commence and prosecute Causes of Action (including, without limitation, Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. All property held in the Creditor Trust for distribution pursuant to the Plan will be held solely in trust for the holders of Allowed Administrative Claims, Class 1 Claims, Class 2 Claims, and Allowed Class 4 Claims and will not be deemed property of the Debtors. Any Person holding assets of the Estates are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust, subject to oversight from the Creditor Trustee. Notwithstanding, any and all claims, actual or contingent, by the Estates, the Committee, the Creditor Trustee, or the Creditor Trust, against any of the Guarantor Released Parties are unconditionally and forever released on the Confirmation Date, and any and all claims, actual or contingent, are not being transferred to the Creditor Trust. The Creditor Trust shall have no rights of any kind or nature whatsoever, expressed or implied, statutory or common law, to investigate or prosecute any such claims against the Guarantor Released Parties.

7.3 **Creditor Advisory Board.** Prior to the Effective Date, the Committee will select three (3) Creditors to serve on the Creditor Advisory Board. The duties of the Creditor Advisory

Board shall be: (a) to select a successor Creditor Trustee in the event that the initial Creditor Trustee needs or is required to resign or is unable to complete its duties as Creditor Trustee; (b) to advise the Creditor Trustee with respect to his or her duties, including the reconciliation of Claims, distributions to beneficiaries of the Creditor Trust and Avoidance Actions; and (c) to file any necessary pleadings with the Bankruptcy Court challenging any actions of the Creditor Trustee as permitted under the Creditor Trust Agreement. The Creditor Trustee shall provide the Creditor Advisory Board with any Quarterly Reports.

7.4 **Cancellation of Equity Securities.** On the Effective Date, all of the Equity Securities in the Debtors will be and are deemed to be canceled and of no further force or effect, whether surrendered or not. Upon receipt by the Debtors (or the Creditor Trust) of the Plan Funding Contribution with a value of $1.6 million from the Plan Funding Source, the Guarantor Released Parties are fully and forever released from any claims or causes of action held by the Debtors and the Creditor Trust.

7.5 **Creditor Trust Asset Administration.** The Creditor Trustee will administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date.

7.6 **Conditions to Confirmation.** The conditions to the occurrence of the Confirmation Date are (i) approval of the Bankruptcy Court of the Disclosure Statement, and (ii) entry of the Confirmation Order in form and substance acceptable to the Plan Proponents.

7.7 **Conditions to Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, unless waived in writing by the Plan Proponents: (i) the Confirmation Order will be a Final Order and no stay will be in effect with respect thereto; (ii) the effectiveness of the Creditor Trust Agreement; and (iii) the collection of liquid funds required to

make Effective Date payments. The Effective Date may not be more than 18 months following entry of a final Confirmation Order, unless otherwise ordered by the Court.

7.8 **Administrative Claims Bar Date.** Notwithstanding anything to the contrary or alternative provided by prior orders of the Bankruptcy Court regarding allowance or payment of Professional Fee Claims, all Persons requesting payment of Administrative Claims (Professional Fee Claims or Other Administrative Expense Claims, but not including 503(b)(9) Claims, which were required to be filed in accordance with the Bar Date Order) shall file applications for payment no later than sixty (60) days after the Effective Date. Objections to such applications for payment, if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within twenty-one (21) days after the filing deadline. Any Administrative Claims for which applications are not timely filed in accordance herewith will be deemed discharged and barred from being asserted against the Debtors; provided, however, that, previously approved or Allowed applications for Administrative Claims do not need to be re-filed, other than the filing of a final fee application with respect to Professional Fee Claims for which an interim fee application has been filed; and provided, further, however, that no 503(b)(9) Claims filed after September 27, 2013 (the date by which 503(b)(9) Claims were required to be filed in these cases pursuant to the Order Establishing Bar Date To File Claims and Establishing Procedures for § 503(b)(9) Claims (Docket No. 305) will be allowed.

7.9 **Termination of Committee.** The Committee will terminate automatically upon the Effective Date. Upon termination of the Committee, the Committee will be dissolved and its members will be deemed released of their duties and responsibilities in connection with the Cases or the Plan and its implementation, and the retention or employment of the Committee's counsel will terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Claims for professional fees).

7.10 **Case Administration.** From and after the Effective Date and continuing through the date that a final decree closing the Cases is entered, the Creditor Trustee will possess the rights of the Debtors for all matters arising in, arising under or related to the Cases. In addition to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to the Cases, the Creditor Trustee will: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) access the records of, or related to, the Debtors (without limitation, but shall be responsible to pay any actual cost related to accessing such records); (iii) be entitled to notice and opportunity for hearing; (iv) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (v) have exclusive standing to commence Avoidance Actions and other Causes of Action; (vi) be entitled to request the Bankruptcy Court to enter a final decree closing the Cases; and (vii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in these Cases.

7.11 **Objections to Claims.**

7.11.1 From and after the Effective Date, the Creditor Trustee will have authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims. The Creditor Trustee will have standing to file objections to such Claims even if such Claims were scheduled by the Debtors as undisputed, liquidated and non-contingent. The Creditor Trustee may file objections to such Claims prior to the commencement of distributions to a particular Class of Claims.

7.11.2 If the Creditor Trustee objects to a Claim, payment will be withheld only with respect to the amount actually in dispute, and such objection will not affect payments or distributions under the Plan on the undisputed portion of the Claim.

7.12 **Filing of Additional Documents.** The Creditor Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.13 **Creditor Trustee's Professionals.** Upon the Effective Date, the Creditor Trustee may retain such Professionals as it deems necessary to effectuate the Plan and the Creditor Trust Agreement. The Professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in these Cases. The Creditor Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict will exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with Section 5.1 of the Plan.

7.14 **INJUNCTION.** EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE CONFIRMATION DATE, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST THE DEBTORS OR ANY OF THE DEBTORS ARE, WITH RESPECT TO OR ON ACCOUNT OF ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM TAKING ANY ACTION AGAINST OR AFFECTING THE DEBTORS OR ANY OF THEM OR THE CREDITOR TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR

OTHER FORUM); (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT); (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER; (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND; (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION; AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN.

7.15    **Discharge.** Upon the Effective Date, any Person that has or could have had a Claim that arose prior to the Confirmation Date shall be deemed to have forever waived, released and discharged the Debtors, and each of them, from any and all Claims, rights and liabilities.  On the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such enjoined Claim against the Debtors, or any of them, or the Creditor Trust.

7.16    **Exculpation and Limitation of Liability.**    Neither the Committee, the Debtors, the Creditor Trust, nor any of their respective members, officers, directors, shareholders, employees, advisors, attorneys or agents or representatives acting in such capacity, will have or incur any liability to, or be subject to any right of action by, any Person or entity, for any act or omission in connection with, relating to or arising out of, the Cases or the pursuit of confirmation

of the Plan, except to the extent arising out of fraud or willful misconduct, and in all respects will be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

7.17    **Release for Plan Funding**.  As a part of its purchase of the Estates assets, the Buyer, CNG, acquired all Chapter 5 avoidance claims against BofA, the Debtors and the Guarantors (the Provenzano family members and their Trusts (collectively the "Insiders")). Further, having made an investigation, the Committee does not believe and will not assert any claims against Insiders. In exchange for funding approximately $2.4 million for an inventory shortage required to close the CNG sale, satisfying the claims of Unified Grocers/GCC and affiliates by making payments and obligating themselves to a $7.2 million note, and making, or causing to make, directly or indirectly an additional contribution (comprised of cash, forgiveness of post-petition loans to the Estate, and the forgiveness of administrative claims against the Debtors purchased post-petition) in an amount of $1,600,000 (calculated using the purchase price of claims, rather than the face amount of such claims); (i) each holder of any claim against the Debtors, or any of them, shall be deemed to unconditionally and forever look to the Creditor Trust in full satisfaction of such claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date against the Debtors, or any of them, their equity security holders, the Guarantors of any of the Debtors' obligations, MAPS Acquisition Enterprises, LLC and all of the above parties' respective members, managers, trustees, beneficiaries, officers, directors, shareholders, affiliates, professionals, employees, agents assigns and successors (collectively the "Guarantor Released

Parties"). This provision shall not act to release any third party contractual guarantees against the Guarantor Released Parties, but includes all claims or causes of action that can be brought by or for the Estate.

7.18 **Quarterly Reports.** The Creditor Trustee will prepare and file with the Bankruptcy Court a report (each a "*Quarterly Report*") within thirty (30) days after the conclusion of every calendar quarter setting forth: (i) all distributions to Creditors during the calendar quarter; (ii) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (iii) a summary of the Creditor Trust Assets. As used in this section, "calendar quarter" means a three month period of time, and the first calendar quarter will commence on the first day of the first month immediately following the occurrence of the Effective Date.

7.19 **U.S. Trustee Fees.** The Debtors shall continue to pay quarterly fees to the U.S. Trustee that have accrued up to the Effective Date. Following the Effective Date, the Creditor Trustee will pay any and all fees to the U.S. Trustee that may become payable after the Effective Date.

## ARTICLE VIII

## Modification of the Plan

The Plan and related documents may be altered, amended or modified by the Plan Proponents, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IX

## General Provisions

9.1 **Headings for Convenience Only.** The headings in the Plan are for convenience of reference only and will not limit or otherwise affect the meanings thereof.

9.2 **Notices.** Any notice required or permitted to be provided under the Plan will be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, freight prepaid, with copies to the following parties and as may otherwise be set forth in the Plan Supplement:

The Debtors:

Michael McGrath, Esq.
Mesch, Clark & Rothschild, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Telephone: 520-624-8886
Facsimile: 520-798-1037
E-Mail: mmcgrath@mcrazlaw.com
*Counsel for the Debtors*

The Committee:

Richard S. Lauter, Esq.
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Facsimile: 312-360-6520
E-Mail: rlauter@freeborn.com
*Counsel for the Committee*

9.3 **Lapsed Distributions.** Any distribution that has not been cleared within ninety (90) days of the date of the distribution will lapse. With respect to any lapsed distributions, the lapsed distribution will revert to the Creditor Trust and be distributed Pro Rata to the remaining beneficiaries of the Creditor Trust in accordance with the Plan and the Creditor Trust Agreement.

9.4 **Undeliverable and Unclaimed Distributions.** If any distribution is returned as undeliverable, no further distributions to such Creditor will be made unless the Creditor Trustee is notified in writing of the Creditor's current address. Upon receipt of the notification, the Creditor Trustee will remit all missed distributions to the Creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Confirmation Date of the Plan. If a claim is not made within that time, all unclaimed distributions will revert to

the Creditor Trust and be distributed Pro Rata to the remaining beneficiaries of the Creditor Trust. Nothing in the Plan will require the Creditor Trustee to attempt to locate any holder of an Allowed Claim.

## ARTICLE X

## Retention of Jurisdiction

This Bankruptcy Court will retain jurisdiction over these Cases for the following purposes:

10.1 Resolution of any and all objections to Claims.

10.2 Determination of all questions and disputes regarding all Causes of Action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Confirmation Date, between: (i) the Debtors and any other Person relating to any Claim or any term of the Plan or any transaction or act occurring under or pursuant to the Plan; (ii) the Creditor Trustee and any other party; or (iii) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with these Cases.

10.3 The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

10.4 Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

10.5 Allowance of all Claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Debtors or the Creditors Trustee pursuant to the provisions of the Plan and the Bankruptcy Code, including but not limited to any professionals retained to pursue Avoidance Actions or otherwise retained by the Creditor Trustee and resolution of all disputes pertaining thereto.

10.6 Resolution of any disputes regarding the Creditor Trust or any claim or controversy related thereto.

10.7 Any review of any actions brought by or taken by Creditor Trustee or its professionals that are challenged by the Creditors Advisory Board pursuant to its ability to challenge certain actions of the Creditor Trustee as set forth in the Creditor Trust Agreement.

10.8 Entry of a final order confirming substantial consummation of the Plan and closing the Cases.

Dated this 30th day of December, 2014.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

/s/ Richard S. Lauter, with permission

21E1297

Richard S. Lauter, Esq.
Thomas R. Fawkes, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Ste. 3000
Chicago, IL 60606
Telephone: 312.360.6000
Facsimile: 312.360.6520
E-mail: rlauter@freeborn.com

*Counsel to Official Committee of Unsecured Creditors*

and

**PRM FAMILY HOLDING COMPANY, L.L.C., *ET AL.***

/s/Frederick J. Petersen, #19944

Michael McGrath, Esq.
Frederick J. Petersen, Esq.
MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, AZ 85701
Telephone: 520.624.8886
Facsimile: 520.798.1037
E-Mail: mmcgrath@mcrazlaw.com
fpetersen@mcrazlaw.com
*Counsel for PRM Family Holding Company, L.L.C., et al.*