

**ORDERED ACCORDINGLY.**

**Dated: April 13, 2015**

**Brenda K. Martin, Bankruptcy Judge**

1  MESCH, CLARK & ROTHSCHILD, P.C.
2  259 North Meyer Avenue
   Tucson, Arizona 85701
3  Phone:  (520) 624-8886
   Fax:    (520) 798-1037
4  Email: mmcgrath@mcrazlaw.com
5        fpetersen@mcrazlaw.com

6  By:   Michael McGrath, # 6019
7        Frederick J. Petersen, #19944
         76155-2
8
9  Attorneys for Debtors

10              UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF ARIZONA
11

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| PRM FAMILY HOLDING COMPANY, L.L.C., ☐<br>PRODIGIO MERCADO, L.L.C., ☐<br>PRO'S ABQ RANCH MARKETS, L.L.C., ☐<br>PRO'S ELP RANCH MARKETS, L.L.C., ☐<br>PRO'S ELP RANCH MARKETS BEVERAGE ☐<br>   COMPANY, L.L.C., <br>PRO & SON'S, L.L.C., ☐<br>PRO'S RANCH MARKETS (CA), L.L.C., ☐<br>PROVENZANO'S, L.L.C., ☐ | Case Nos. 2:13-bk-09026-BKM<br>     2:13-bk-09028-BKM<br>     2:13-bk-09030-BKM<br>     2:13-bk-09033-BKM<br>     2:13-bk-09034-BKM<br>     2:13-bk-09036-BKM<br>     2:13-bk-09037-BKM<br>     2:13-bk-09039-BKM<br>(Joint Administration) |
|      Debtors. | **ORDER CONFIRMING JOINT PLAN<br>OF LIQUIDATION DATED<br>DECEMBER 30, 2014 AS AMENDED** |
| This Filing Applies to:<br>☒ All Debtors<br>☐ Specified Debtors | |

        On July 25, 2014, the Official Committee of Unsecured Creditors (the "Committee")

and the above captioned Debtors (the "Debtors") (collectively "Plan Proponents") filed a

Joint Plan of Liquidation. On December 30, 2014, the Plan Proponents filed an Amended

Joint Plan of Liquidation ("Amended Joint Plan of Liquidation" or "Plan").

Copies of the Amended Joint Plan of Liquidation and the First Amended Disclosure Statement, which was previously approved by this Court, were transmitted to all of the holders of claims against the Debtors.

Mojave Food Corp., Bro-Pack Enterprises and Bar-S Foods filed conditional ballots with reservation of rights with respect to the plan, Connecticut General Life Insurance Company and Related Cigna Entities filed an objection, the Office of the Attorney General on behalf of the Texas Comptroller of Public Accounts filed an objection, TRC Masterfund filed an objection, the U.S. Trustee filed an objection, and NAPI Fresh Pack filed an objection.

On March 11, 2015, TRC Masterfund withdrew its objection to confirmation.

On March 30, 2015, NAPI Fresh Pack withdrew its objection to confirmation.

On March 31, 2015, NAPI Fresh Pack withdrew its previous withdraw of its objection to confirmation.

On March 19, 2015, the Plan Proponents, Bro-Pack Enterprises and Bar-S Foods filed a stipulation [Docket No. 1375] that contained agreed-to language to insert into this Confirmation Order to address and resolve the conditional nature of Bro-Pack Enterprises' and Bar-S Foods' ballots and satisfy their reservation of rights.

On February 13, 2015, the Committee filed a Ballot Report with regard to the Amended Joint Plan of Liquidation indicating that four out of five classes accepted the Plan including 63 ballots of general unsecured creditors.

On April 8, 2015, the Court held a continued confirmation hearing on NAPI Fresh Pack's objection to confirmation based on good faith.

Dale Schian of Schian & Walker shall become the Creditor Trustee of the Creditor Trust.

Except as set forth below regarding the "Released Claims", upon confirmation, all of the assets of the Debtors shall immediately be transferred to the Creditor Trust.

The Effective Date of the Plan shall be the date when the Creditor Trust has liquid assets sufficient to make Effective Date payments.

The Court conducted a hearing on plan confirmation on April 1, 2015. Having considered the record, the evidence presented, and the presentation of counsel,

**THE COURT FINDS AND CONCLUDES AS FOLLOWS:**

1.      This matter is a core proceeding in which this Court may enter final and dispositive orders in accordance with 28 U.S.C. §§1334 and 157(b)(2)(L).

2.      The Court finds and concludes that the solicitation of votes to accept or reject the Plan as Modified was in compliance with all applicable non-bankruptcy law, rules and regulations governing the adequacy of disclosure in connection with such solicitation in accordance with Bankruptcy Code §1126(a), and that such solicitation was conducted after disclosure of adequate information as defined in Bankruptcy Code §1125. Moreover, the Court finds that notice of the Plan as Modified and its Confirmation Hearing was appropriate and adequate under the Bankruptcy Code and Rules, including the disclosure requirements of Bankruptcy Code §1125. Accordingly, no further disclosure of information, solicitation of votes, or voting is required.

3.      The classification of claims and interests under the Liquidating Plan complies with Bankruptcy Code §§1122 and 1123(a)(1).

4.      The Court finds and concludes that the Plan as Modified complies with the applicable provisions of Title 11 of the United States Code in accordance with Bankruptcy Code §1129(a)(1).

5.      The Court finds and concludes that the Plan Proponents have complied with the applicable provisions of Title 11 of the United States Code, in accordance with Bankruptcy Code §1129(a)(2).

6.      NAPI Fresh Pack filed an Objection based on good faith. The Court considered the pleadings filed by the parties and arguments made by counsel at the April 8,

1  2015 hearing and the Court finds and concludes that the Plan Proponents have proposed the

2  Plan as Modified in good faith and not by any means forbidden by law and that the Debtors

3  have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan

4  as Modified and these Chapter 11 cases in accordance with Bankruptcy Code §1129(a)(3).

5  Therefore, NAPI's Objection to confirmation is overruled.

6      7.    The Court finds and concludes that the payments made or promised by the

7  Debtors for services or for costs and expenses in connection with the cases and the Plan as

8  Modified, and incident to the cases, have been disclosed to the Court in accordance with

9  Bankruptcy Code §1129(a)(4).

10     8.    The Court finds and concludes that the Plan Proponents have disclosed the

11 identity and affiliations of all individuals proposed to serve after confirmation, as the

12 Trustee of the Liquidation Trust under the Plan, and that the appointment or continuance in

13 such office of such individuals is consistent with the interests of creditors and with public

14 policy, in accordance with Bankruptcy Code §1129(a)(5).

15     9.    The Court finds and concludes that the Plan as Modified does not propose any

16 rates that need to be approved by governmental regulatory commission in accordance with

17 Bankruptcy Code §1129(a)(6).

18     10.   With respect to each Class, each holder of a claim or interest in such Class has

19 accepted the Plan, or will receive or retain under the Plan on account of such claim or

20 interest, property of a value as of the Effective Date of the Plan that is not less than the

21 amount that such holder would so receive or retain if the Debtors were liquidated under

22 Chapter 7 in accordance with Bankruptcy Code §1129(a)(7).

23     11.   The Court finds and concludes that each Class has accepted the plan in

24 accordance with Bankruptcy Code §1129(a)(8)(A).

25     12.   The Court finds and concludes pursuant to Bankruptcy Code §1129(a)(9), that

26 all creditors with priority claims pursuant to Bankruptcy Code §§507(a)(1) through (a)(8)

will receive, on the Effective Date, cash equal to the allowed amount of such claims, or deferred cash payments of a value as of the Effective Date equal to the allowed amounts of such claims or as the respective Debtor and the creditor have agreed.

13.     The Court finds and concludes that at least one Class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider in accordance with Bankruptcy Code §1129(a)(10).

14.     The Court finds and concludes that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors in accordance with Bankruptcy Code §1129(a)(11).

15.     The Court finds and concludes that all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan in accordance with Bankruptcy Code §1129(a)(12).

16.     The Court finds and concludes that there are no retiree benefits applicable to this estate in accordance with Bankruptcy Code §1129(a)(13).

17.     The Court finds and concludes that the Plan complies with all applicable provisions and requirements set forth in Bankruptcy Code §1129(a)(1) through (13).

18.     The Court finds and concludes that the Plan is fair and equitable and does not unfairly discriminate against any creditor or any Class of creditors in accordance with Bankruptcy Code §1129(b).

19.     The Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 and, therefore, that the Plan complies with Bankruptcy Code §1129(d).

20.     The Connecticut General Life Insurance Company and Related Cigna Entities' Objection [Docket No. 1338] is deemed resolved, the Plan Ballots submitted by Cigna Entities are deemed to have been cast in favor of the Plan, and the Plan is hereby amended

in accordance with Article VIII of the Plan and 11 U.S.C. §1127, and the following Section 5.2.4 is added to the Plan in its entirety as though fully set forth therein:

    5.2.4  Connecticut General Life Insurance Company, Cigna HealthCare of Arizona, Inc., Cigna HealthCare of California, Inc., Cigna Dental Health Plan of Arizona, Inc., Cigna Dental Health of California, Inc., and Cigna Dental Health of Texas, Inc. (collectively, the "Cigna Entities") shall have Allowed Class 1 Claims in the aggregate amount of $372,824.88, each entitled to priority under 11 U.S.C. 507(a)(5) ("Cigna Claims"). Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or the Creditor Trust Agreement, the Cigna Claims shall be paid pursuant to the priority of the United States Bankruptcy Code and in full before any claims with a lesser priority, including lesser priority claims pursuant to 11 U.S.C. §507(a) and claims in classes junior to Class 1. The Debtors, the Estates, the Creditor Trust, and the Creditor Trustee each hereby release the Cigna Entities from any and all Avoidance Actions.

21. Nothwithstanding Section 7.14 of the Plan, no creditor will be deemed to have waived or released their rights to claim a set-off pursuant to 11 U.S.C. §553 of the Bankruptcy Code.

22. Provision 7.16 of the Plan shall be revised to state:

**Exculpation and Limitation of Liability.** Neither the Committee, the Debtors, the Creditor Trust, nor any of their respective members, officers, directors, shareholders, employees, advisors, attorneys or agents or representatives acting in such capacity (collectively the "Exculpated Parties"), will have or incur any liability to, or be subject to any right of action by, any Person or entity, for any act or omission in connection with, relating to or arising out of, the Cases or the pursuit of confirmation of the Plan, except for those causes of

action allowed under applicable state or federal law. Such Exculpated Parties will, in all respects, be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan. Any cause of action alleged to be either related to or have risen out of the Cases or confirmation of the Plan, shall be brought before the Bankruptcy Court as the court of competent jurisdiction.

23. Provision 7.17 shall be revised to state:

**Release for Plan Funding**. As a part of its purchase of the Estates assets, the Buyer, CNG, acquired all Chapter 5 avoidance claims against BofA, the Debtors and the Guarantors (the Provenzano family members and their Trusts (collectively the "Insiders")). Further, having made an investigation, the Committee does not believe and will not assert any claims against Insiders. In exchange for funding approximately $2.4 million for an inventory shortage required to close the CNG sale, satisfying the claims of Unified Grocers/GCC and affiliates by making payments and obligating themselves to a $7.2 million note, and making, or causing to make, directly or indirectly an additional contribution (comprised of cash, forgiveness of post-petition loans to the Estate, and the forgiveness of administrative claims against the Debtors purchased post-petition) in an amount of $1,600,000 (calculated using the purchase price of claims, rather than the face amount of such claims*);* (i) each holder of any claim against the Debtors, or any of them, shall be deemed to unconditionally and forever look to the Creditor Trust in full satisfaction of such claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date against the Debtors, or any of them, their equity security holders, the Guarantors of any of the Debtors' obligations, MAPS Acquisition Enterprises, LLC and all of the above parties' respective members, managers, trustees, beneficiaries, officers, directors, shareholders,

affiliates, professionals, employees, agents assigns and successors (collectively the "Guarantor Released Parties"). This provision shall not act to release any cause of action by a third party against the Guarantor Released Parties, but includes all claims or causes of action that can be brought by or for the Estate.

24.     The Court finds and concludes that the Court's retention of jurisdiction as set forth in Article X of the Plan comports with 28 U.S.C. §157. The Court will retain jurisdiction as stated in the Plan, including:

a.  Resolution of any and all objections to Claims.

b.  Determination of all questions and disputes regarding all Causes of Action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Confirmation Date, between: (i) the Debtors and any other Person relating to any Claim or any term of the Plan or any transaction or act occurring under or pursuant to the Plan; (ii) the Creditor Trustee and any other party; or (iii) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with these Cases.

c.  The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

d.  Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

e.  Allowance of all Claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Debtors or the Creditor Trustee pursuant to the provisions of the Plan and the Bankruptcy Code, including but not limited to any professionals retained to pursue Avoidance Actions or otherwise retained by the Creditor Trustee and resolution of all disputes pertaining thereto.

f.   Resolution of any disputes regarding the Creditor Trust or any claim or controversy related thereto.

g.   Any review of any actions brought by or taken by Creditor Trustee or its professionals that are challenged by the Creditors Advisory Board pursuant to its ability to challenge certain actions of the Creditor Trustee as set forth in the Creditor Trust Agreement.

h.   Entry of a final order confirming substantial consummation of the Plan and closing the Cases.

**NOW, THEREFORE,** in light of the foregoing Findings of Fact and Conclusions of Law:

**IT IS, THEREFORE, ORDERED** that the Joint Plan of Liquidation Dated December 30, 2014 is hereby **CONFIRMED.**

**IT IS FURTHER ORDERED** that all of the Court's Findings and Conclusions stated above are incorporated by reference as part of the decree and adjudications made by the Court in this Confirmation Order.

**IT IS FURTHER ORDERED** that to the extent not otherwise withdrawn, all objections to the Plan as Modified are overruled.

**IT IS FURTHER ORDERED** notwithstanding anything contained in the Plan or this Confirmation Order, upon entry of this Confirmation Order, the Plan Proponents, on behalf of themselves and the Estates, waive and release Mojave Food Corp., Bar-S Foods Co., and Bro-Pack Enterprises, Inc., and each of their affiliates from any and all claims and causes of action, including without limitation, Claims, Causes of Action, and Avoidance Actions arising under the Bankruptcy Code, or under State or Federal statutes and common law, including without limitation, fraudulent transfer and preferential transfer laws (collectively, the "Released Claims" and individually, a "Released Claim"). The Plan Proponents, on their own behalf, on behalf of the Estates, and on behalf of any trustee or

representative that may be appointed over the Estates, agree that none of them will pursue the recovery of any Released Claim or assert a defense on account of a Released Claim. The Released Claims are not considered assets that vest in the Creditor Trust on the Confirmation Date or the Effective Date, and the Creditor Trustee, and any agent, successor, or assign of the Creditor Trustee, are prohibited from pursuing the Released Claims or asserting a defense on account of a Released Claim.

**IT IS FURTHER ORDERED** that Dale Schian is appointed the Creditor Trustee and the Creditor Trust Agreement attached to this Order as Exhibit A is approved.

**IT IS FURTHER ORDERED** that the Creditor Trustee and Plan Proponents are authorized, on or before the Effective Date, to enter and execute any documents necessary to implement the Plan.

**IT IS FURTHER ORDERED** that the Creditor Trustee shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The Creditor Trustee shall file with the Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee and provided to the Creditor Trustee by the United States Trustee.

**IT IS FURTHER ORDERED** that the Debtors shall provide notice of this Order within ten (10) days of its entry to all creditors and parties in interest.

**IT IS FURTHER ORDERED** that this Order shall be accorded finality pursuant to F.R. Civ.P. 54(b), made applicable to bankruptcy proceedings by Bankr.R. 9014.

**DATED AND SIGNED ABOVE.**

2270854.DOCX

# EXHIBIT A

FREEBORN & PETERS LLP
Richard S. Lauter, Esq. (Illinois Bar No. 6182859)
Thomas R. Fawkes, Esq. (Illinois Bar No. 6277451)
311 South Wacker Drive, Ste. 3000
Chicago, IL 60606
Telephone: 312.360.6000
Facsimile: 312.360.6520

SCHIAN WALKER, P.L.C.
Dale C. Schian, #010445
Cody J. Jess, #025066
1850 North Central Avenue, #900
Phoenix, AZ 85004-4531
Telephone: 602.277.1501
Facsimile: 602.297.9633
E-Mail: ecfdocket@swazlaw.com

Counsel for the Official Committee of Unsecured
Creditors of PRM Family Holding Company L.L.C., *et
al.*

and

MESCH, CLARK & ROTHSCHILD, P.C.
Michael McGrath, #6019
259 North Meyer Avenue
Tucson, AZ 85701
Telephone: 520.624.8886
Facsimile: 520.798.1037
E-Mail: mmcgrath@mcrazlaw.com

Counsel for PRM Family Holding Company, L.L.C.,
*et al.*

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PRM FAMILY HOLDING COMPANY, L.L.C., *et al.*,<br><br>Debtors, | Chapter 11<br><br>Case No. 2:13:-bk-09026-SSC<br><br>(Jointly Administered) |
| This Filing Applies to:<br><br>☒ All Debtors<br>☐ Specified Debtors | **PRM Family Holding Company, L.L.C. Creditor Trust Agreement** |

## PRM FAMILY HOLDING COMPANY, L.L.C.
## <u>CREDITOR TRUST AGREEMENT</u>

### <u>PREAMBLE</u>

This Creditor Trust Agreement (the "*Agreement*") is made this ___ day of _____, 2015, by and among PRM Family Holding Company, L.L.C. and its affiliated debtor entities (the "*Debtors*"), the Official Committee of Unsecured Creditors (the "*Committee*"), and Dale C. Schian, not individually, but solely as trustee of the Creditor Trust (the "*Trustee*" and, together with the Debtors and the Committee, the "*Parties*") in accordance with the Joint Plan of Liquidation dated December 30, 2014 (the "*Plan*"), confirmed by the Bankruptcy Court (as defined *infra*) by the Order Confirming Joint Plan of Liquidation Dated December 30, 2014 dated _____ (the "*Confirmation Order*").[1]

### R E C I T A L S:

A.     On May 28, 2013, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Arizona (the "*Bankruptcy Court*") and commenced their chapter 11 cases (the "*Cases*");

B.     On July 2, 2013, the Office of the United States Trustee for the District of Arizona (the "*U.S. Trustee*") appointed the Committee, which is comprised of (i) Valassis; (ii) G H Dairy El Paso; (iii) All American Plastic & Packaging; (iv) Marcus Food Co.; and (v) Hidden Villa Ranch;

C.     The Plan and the Confirmation Order provide, among other things, that the Trustee shall be empowered to make distributions, pursuant to the Plan, the Confirmation Order and this Agreement, to holders of Allowed Administrative Claims, Allowed Class 1 Priority Claims, Allowed Class 2 Priority Tax Claims and Allowed Class 4 Claims (collectively, the "*Beneficiaries*");

D.     The Creditor Trust (the "*Trust*") is created pursuant to, and to effectuate the Plan and the Confirmation Order;

E.     The Trust is created on behalf of, and for the sole benefit of, the Beneficiaries;

F.     The powers, authority, responsibilities and duties of the Trustee shall be governed by this Agreement, the Plan, applicable orders issued by the Bankruptcy Court (including the Confirmation Order), and general fiduciary obligations of trustees under Arizona law;

G.     Pursuant to the terms and conditions of the Plan, the Confirmation Order and this Agreement, the Trustee shall administer the Trust Assets;

---

[1]     Terms not defined herein shall have the meanings ascribed to them in the United States Bankruptcy Code, the Rules of Bankruptcy Procedure or the Plan.

2

H.     This Agreement is intended to supplement and complement the Plan and the Confirmation Order; provided, however, that if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan or the Confirmation Order, the Plan and the Confirmation Order shall govern; and

I.     The Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986 and the regulations promulgated thereunder, specifically Treas. Reg. § 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Beneficiaries treated as the grantors and owners of the Trust Assets.  In particular, the Trust shall comply with all requirements of applicable law to maintain "liquidating trust" and "grantor trust" status.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan and the Confirmation Order, the Parties agree as follows:

# ARTICLE I
## ESTABLISHMENT OF THE CREDITOR TRUST

1.1     Transfer of Assets to the Trust

1.1.1     Pursuant to the Plan, the Debtors, the Committee and the Trustee hereby establish the Trust on behalf of the Beneficiaries, to be treated as the grantors and deemed owners of the assets of the Trust, and the Debtors agreed to transfer, assign and deliver to the Trust, on behalf of the Beneficiaries, all of their right, title and interest in the Creditor Trust Assets, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. The Trust agrees to accept and hold the Creditor Trust Assets in the Trust for the benefit of the Beneficiaries, subject to the terms of the Plan, the Confirmation Order and this Agreement.

1.1.2     All rights in connection with the vesting and transfer of the Creditor Trust Assets, including, but not limited to, the Plan Fund, the Plan Funding Contribution, the Avoidance Actions and the Causes of Action, and any attorney-client privileges, work-product protection or other privilege or immunity attaching to any documents or communications of the Debtors' or Committee's professionals (whether written or oral) related to the Creditor Trust Assets, will vest with the Trust.  All cash held in bank accounts established by the Debtors will be transferred to and held in the Trust on behalf of the Beneficiaries, subject to the provisions of the Plan and this Agreement.  The Debtors, the Committee and the Trustee are authorized to take all necessary actions to effectuate the foregoing.

1.2     Title to Creditor Trust Assets

1.2.1     Within seven (7) days of the Effective Date, the Debtors shall transfer the Creditor Trust Assets to the Trust for the benefit of the Beneficiaries.  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all assets and properties transferred to the Trust pursuant to the Plan shall vest in the Trust.  Upon the transfer of the assets of the Estates to the Trust, the Debtors shall have no interest in or with respect to such Creditor Trust Assets or the Trust.

3

1.2.2   For federal income tax purposes, all parties (including, without limitation, the Debtors, the Trustee and the Beneficiaries) shall treat the transfer of the Creditor Trust Assets by the Debtors to the Trust as a transfer of such assets by the Debtors to the Beneficiaries entitled to distributions under the Plan and the Confirmation Order, followed by a transfer by such holders to the Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

1.2.3   To any extent not effectuated by the Confirmation Order, the Debtors and the Committee shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors and the Committee shall take or cause to be taken such further action as may reasonably be necessary or appropriate, to vest or perfect in or confirm to the Trust title to and possession of the Creditor Trust Assets.

1.3   Claims Against the Creditor Trust Assets

The Creditor Trust Assets shall be subject to the claims of the Trustee, its Professionals (as defined *infra*) and Non-Professionals (as defined *infra*) and U.S. Trustee fees. The Trustee shall be entitled to reimburse such persons out of any available cash in the Trust, for reasonable compensation and actual reasonable out-of-pocket expenses, and against and from any and all loss, liability, expense or damage, which each may sustain in good faith and without willful misconduct, gross negligence, fraud or, solely in the case of the Trustee, breach of fiduciary duty other than negligence, in the exercise and performance of any of the powers and duties of the Trustee.

## ARTICLE II
## APPOINTMENT OF THE TRUSTEE

Dale C. Schian is hereby appointed to serve as the initial Trustee under the Plan and hereby accepts this appointment and agrees to serve in such capacity, effective upon the date of this Agreement. Any successor Trustee shall be appointed as set forth in **Section 4.6** in the event any Trustee is removed or resigns pursuant to this Agreement, or if such Trustee otherwise vacates the position.

## ARTICLE III
## DUTIES AND POWERS OF THE CREDITOR TRUSTEE

3.1   Generally

The Trustee shall be responsible for administering the Creditor Trust Assets and taking actions on behalf of, and representing, the Trust. The Trustee shall have the authority to bind the Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Trustee and not individually.

3.2   Scope of Authority

The responsibilities and authority of the Trustee shall include, without limitation: (a) collecting and liquidating the Creditor Trust Assets and distributing the Creditor Trust Assets

4

to the Beneficiaries in accordance with the Plan, the Confirmation Order and this Agreement; (b) facilitating the prosecution or settlement of objections to, or estimations of, claims in accordance with, but subject to the limitations set forth in, the Plan; (c) analyzing, prosecuting and settling avoidance actions and other causes of action; (d) in accordance with **Section 12.1**, filing all required tax returns and paying taxes and all other obligations on behalf of the Trust from funds held by the Trust; (e) filing Quarterly Reports; (f) providing periodic reports to the Bankruptcy Court, the Creditor Advisory Board and other parties-in-interest on the status of the Claims resolution process, the status of the prosecution of Avoidance Actions and other Causes of Action, distributions to Beneficiaries and the financial status of the Trust; (g) performing such administrative, ministerial, and other functions reasonably appropriate to the Debtors' orderly liquidation, including but not limited to, such actions as may be associated with the filing of all required tax returns and the dissolution of the Debtors under Arizona, Delaware, New Mexico, Texas and California law; and (h) carrying out such other responsibilities not specifically set forth herein as may be vested in the Trustee pursuant to the Plan, this Agreement, any Bankruptcy Court order or as may otherwise be necessary and proper to carry out the provisions of the Plan and the Confirmation Order.

### 3.3     <u>Fiduciary Obligations Owed to the Trust and Beneficiaries</u>

The Trustee's fiduciary obligations to the Trust and its Beneficiaries are the same fiduciary obligations that exist under Arizona law.

### 3.4     <u>Powers</u>

In connection with the administration of the Trust, except as otherwise set forth in this Agreement, the Plan or the Confirmation Order, the Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Trust, without further authorization from the Bankruptcy Court. Without limiting, but subject to, the foregoing, the Trustee is expressly authorized, but not required, unless otherwise provided in this Agreement and subject to the limitations contained herein, in the Plan and in the Confirmation Order, to:

(a)     hold legal title (on behalf of the Trust as Creditor Trustee, but not individually) to the Creditor Trust Assets;

(b)     effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan;

(c)     protect and enforce the rights to the Creditor Trust Assets vested in the Trust by the Plan and the Confirmation Order by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     invest funds (in the manner set forth in **Section 3.8**), make distributions, and pay taxes and other obligations owed by the Trust from funds held by the Creditor Trustee and/or the Trust in accordance with the Plan and the Confirmation Order;

(e)     prosecute, defend, compromise, adjust, arbitrate, abandon or otherwise deal with and settle, in accordance with the terms set forth herein and in the Plan and

5

Confirmation Order, all actions arising under state law or the Bankruptcy Code, specifically, but not limited to, Avoidance Actions arising under or related to Chapter 5 of the Bankruptcy Code and other Causes of Action; provided, however, that the Trustee shall not be required to obtain approval from the Bankruptcy Court to settle a claim or cause of action.

(f)      determine, compromise and satisfy any and all liabilities created, incurred or assumed by the Trust;

(g)      file, if necessary, any and all tax and information returns with respect to the Trust and pay taxes properly payable by the Trust, if any, commensurate with the Trust's classification as a grantor trust pursuant to Treas. Reg. § 1.671-4(a);

(h)      make all tax withholdings and make tax elections by and on behalf of the Trust, to the extent necessary or desired by the Trustee;(i)   in reliance upon the Claims List (as defined *infra*) provided by the Debtors, maintain on the Trust's books and records, a register evidencing the interest herein held by each Beneficiary;

(j)      administer, reconcile, compromise, estimate and/or resolve Claims in accordance with, but subject to the limitations set forth in, the Plan (including the filing of any objections to such claims as appropriate); provided, however, that the Trustee shall not be required to obtain approval from the Bankruptcy Court to effect any of the foregoing;

(k)      establish such reserves for disputed claims, taxes, assessments, professional fees and other expenses of administration of the Trust as may be necessary and appropriate;

(l)      make distributions as provided for in this Agreement, the Plan and the Confirmation Order;

(m)      open and maintain bank accounts on behalf of or in the name of the Trust;

(n)      pay expenses and make disbursements necessary to preserve, liquidate and enhance the Creditor Trust Assets;

(o)      purchase such insurance coverage as the Trustee deems necessary and appropriate with respect to real and personal property, the liabilities, and obligations of the Trust, in the form of an errors and omissions policy, fiduciary policy or otherwise;

(p)      retain and pay Professionals and Non-Professionals as provided for in **Article XI** of this Agreement to assist the Trustee with its responsibilities under this Agreement, the Plan and the Confirmation Order;

(q)      take such actions as are necessary, appropriate or desirable to close or dismiss the cases;

(r)      take such actions as are necessary, appropriate or desirable to terminate the existence of the Debtors to the extent not already effectuated pursuant to the Plan;

6

(s)    terminate and dissolve the Trust pursuant to and in accordance with the terms of the Plan and this Agreement; and

(t)    assume such other powers as may be vested in or assumed by the Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan, the Confirmation Order or this Agreement.

3.5    General Authority of the Trustee

Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Agreement or specifically contemplated in the Plan and the Confirmation Order.

3.6    Limitation of Trustee's Authority; No On-Going Business

The Trustee shall have no power or authority except as set forth in this Agreement, in the Plan or in the Confirmation Order. For federal tax purposes, the Trustee shall not be authorized to engage in any trade or business with respect to the Creditor Trust Assets except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust. The Trustee shall take such actions consistent with the prompt orderly liquidation of the Creditor Trust Assets as required by applicable law and consistent with the treatment of the Trust as a liquidating trust under Treas. Reg. § 301.7701-4(d), to the extent such actions are permitted by this Agreement.

3.7    Other Activities of the Creditor Trustee

The Creditor Trustee shall be entitled to be employed by third parties while serving as Creditor Trustee; provided, however, that such employment shall not include actions or representations of parties that are adverse to the Trust.

**ARTICLE IV**
**TRUSTEE**

4.1    Compensation

The Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Trust. All compensation and other amounts payable to the Trustee shall be paid out of the Trust. The Trust shall reimburse the Trustee for his actual reasonable out-of-pocket expenses. All reimbursement for expenses to the Trustee shall be paid from the Trust in priority over any distributions to Beneficiaries to be made under the Plan. If the Creditor Trust Assets are insufficient to fully satisfy the amounts payable to, or other obligations owing to, the Trustee, the Beneficiaries shall be required to disgorge their Pro Rata share of any interim distributions received from the Trust, until all such amounts have been fully paid and all such obligations have been fully satisfied. If the Trustee dies or becomes disabled, then such former Trustee or his or her estate, successor or assigns shall be entitled to any remaining unpaid compensation and reimbursement due hereunder.

4.2    Term of Service

7

The Trustee shall serve until the earliest of: (a) the completion of all of the Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Trust in accordance with this Agreement; and (c) the Trustee's death, resignation or removal.

4.3     <u>No Bond</u>

The Trustee shall serve without bond.

4.4     <u>Removal</u>

A majority (by number) of the Beneficiaries may at any time, for cause, petition the Bankruptcy Court for the removal of the Trustee; <u>provided</u>, <u>however</u>, that the Trustee may not be removed until a successor Trustee has been named. "Cause" shall include, without limitation: (a) the undue protraction of the duration of the Trust and of distributions of the Creditor Trust Assets to the Beneficiaries; (b) gross negligence, fraud or willful misconduct (as determined by a final Court order) in connection with the affairs of the Trust; (c) a physical and/or mental disability that substantially prevents the Trustee from performing his duties; or (d) breach of fiduciary duty or an unresolved conflict of interest. Removal shall be effective on the date specified in the order approving the removal.

4.5     <u>Resignation</u>

The Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the Creditor Advisory Board. The resignation will be effective on the later of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor Trustee accepts his or her appointment as such.

4.6     <u>Appointment of Successor Trustee</u>

In the event the Trustee resigns or is removed for cause or vacates the position due to death or incapacity, the Creditor Advisory Board shall designate a successor Trustee. Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court. Thereupon, such successor Trustee shall, without any further act, become vested with all of the properties, rights, powers, trusts and duties of his or her predecessor in the Trust with like effect as if originally named herein; <u>provided</u>, <u>however</u>, that the resigning Trustee shall, nevertheless, when requested in writing by his successor, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor all the estates, properties, rights, powers and trusts of the removed or resigning Trustee.

4.7     <u>Perpetuation of the Trust Continuance</u>

The resignation or removal of the Trustee will not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

## ARTICLE V
## CREDITOR ADVISORY BOARD

8

5.1     Creation

Simultaneously with the creation of the Trust, a committee (the "*Creditor Advisory Board*") comprised of three (3) members of the Committee shall be established.  The initial "Members" of the Creditor Advisory Board are _____, _____ and _____.  These Members will serve, not as individuals, but as representatives of their respective organizations.  Each Member shall serve until the earlier of:  (a) his or her death or resignation; (b) his or her removal pursuant to **Section 5.6** of the Agreement; and (c) the termination of the Trust.

5.2     Role

The duties of the Creditor Advisory Board shall be: (a) to select a successor Trustee in the event that the initial Trustee needs or is required to resign or is unable to complete his duties; (b) to advise the Trustee with respect to his duties, including the reconciliation of claims, distributions to Beneficiaries, and Avoidance Action; and (c) to file any necessary pleadings with the Bankruptcy Court challenging any actions of the Trustee as permitted pursuant to **Section 5.3** of this Agreement.  The Trustee shall provide the Creditor Advisory Board with all Quarterly Reports.  Neither the Creditor Advisory Board nor its Members shall exercise any control or authority over the Trust or the Creditor Trust Assets that is inconsistent with the provisions of this Agreement.

5.3     Challenges to Actions of the Trustee

Upon a majority vote, the Creditor Advisory Board may file a pleading with the Bankruptcy Court challenging an action taken or not taken by the Trustee, solely with respect to the following: (a) the status of the Trust as a grantor trust pursuant to Treas. Reg. § 301.7701-4(d) being put in jeopardy; (b) gross negligence, fraud or willful misconduct in connection with the affairs of the Trust; and (c) breach of fiduciary duty or an unresolved conflict of interest.

5.4     Compensation

The Creditor Advisory Board shall not be compensated for services rendered to the Trust.  However, the Members shall be reimbursed by the Trust for all reasonable out-of-pocket expenses incurred in serving on the Creditor Advisory Board, other than fees and expenses of professionals retained by individual Members.

5.5     Resignation of a Member

A Creditor Advisory Board Member may resign by giving not less than fifteen (15) days' prior written notice thereof to the parties entitled to notice under **Section 14.10** hereof.  From and after the date of its resignation from the Board, the resigning Member shall have no further rights or obligations under this Agreement.

5.6     Removal of a Member

5.6.1     Removal for Disability.  Subject to Bankruptcy Court approval, a Member of the Creditor Advisory Board may be removed by a unanimous vote of all other Members of

9

the Board upon a finding that such Member is unable to perform his or her duties due to illness or other physical or mental disability.

      5.6.2  <u>Removal for Cause</u>.  Subject to Bankruptcy Court approval, a Member of the Creditor Advisory Board may be removed for cause by a unanimous vote of all other Members of the Board.  "Cause" shall include, without limitation:  (a) fraud or willful misconduct in connection with the affairs of the Trust; or (b) breach of fiduciary duty or an unresolved conflict of interest.

5.7    <u>Replacement of Member</u>

      In the event that a Member resigns or is removed in accordance with this **Article V**, the remaining Members may designate a successor.

5.8    <u>Protection of Members</u>

      Members may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Member has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Members may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Creditor Advisory Board Members may consult with any counsel employed by the Trust or by the Creditor Advisory Board.

5.9    <u>Meetings</u>

      5.9.1  <u>Board Meetings</u>.  Meetings may be held whenever and wherever called for by at least two members of the Board, the Trustee or his counsel.

      5.9.2  <u>Notice of and Waiver of Notice for Meetings</u>.  Notice of the time and place of any meeting will be given to the Members in person or by telephone, mail, electronic mail or facsimile transmission.  Notice of meetings will be deemed given when:  (a) if given by mail, the same is deposited in the United States mail at least ten (10) calendar days before the meeting date, with postage thereon prepaid; (b) if given by electronic mail or facsimile transmission, the same is transmitted at least two (2) business days prior to the convening of the meeting; or (c) if personally delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Members or to an adult member of his/her office staff or household, at least two (2) business days prior to the convening of the meeting.  Any Member may waive notice of any meeting and any adjournment thereof.  Except as provided in the next sentence below, the waiver must be in writing, signed by the applicable Member and filed with the minutes or records of the Trust.  The attendance of a Member at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

      5.9.3  <u>Manner of Participation in Meetings</u>.  Any Member may participate in a meeting, or conduct the meeting, in person or through the use of conference telephone,

videoconference or similar communications equipment by means which all persons participating in the meeting may hear each other. Notice of such meeting may generally describe the arrangements for the holding thereof. Any Member participating in a meeting by such means is deemed to be present for the meeting.

   5.9.4 <u>Manner of Acting</u>. The Creditor Advisory Board acts through the vote of a majority of Members acting at a duly noticed meeting of the Creditor Advisory Board.

  5.10 <u>Action Without a Meeting</u>

   Any action required or permitted at a meeting may be taken without a meeting if taken by unanimous written consent describing the action taken, signed by all Members and recorded in the minutes or other transcript of proceedings.

  5.11 <u>Dispute Resolution</u>

   In the event of a dispute among Members, involving an allegation that a party has failed to act in a manner consistent with the Plan or this Agreement, the parties shall meet and confer and attempt to reach a consensual resolution of the dispute. Should a consensual resolution not be reached, any Member may seek appropriate relief from the Bankruptcy Court, which retains jurisdiction to resolve such disputes.

  5.12 <u>Limitation of Liability and Indemnification</u>

   5.12.1 The Members shall not be personally liable to the Trust or to any Beneficiary (or any successor of such entities) except willful misconduct or fraud as determined by a final order. The Members and any employees, professionals and agents of Advisory Board, shall be defended, held harmless and indemnified and shall be entitled to reimbursement of their expenses; <u>provided</u>, <u>however</u>, that such Member shall be obligated to repay any amounts reimbursed if a court of competent jurisdiction determines that such Member violated its standard of care.

   5.12.2 Any persons having a claim against any Member or their agents by reason of their conduct as a Creditor Advisory Board Member shall look only to the Trust for payment or satisfaction of such claim.

   5.12.3 The indemnification and exculpation provisions hereunder shall supplement and augment those provisions set forth in the Plan.

**ARTICLE VI**
**TRUST BENEFICIARIES**

  6.1 <u>Identification of Beneficiaries</u>

   The interests of each Beneficiary in the Trust shall be recorded and set forth in the Claims List maintained by the Trustee.

  6.2 <u>Interest Only</u>

11

The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Creditor Trust Assets or to any right to call for a partition or division of such Trust or the Creditor Trust Assets or to require an accounting, except as specifically provided herein.

6.3    Interests Held Pro Rata

Each Beneficiary shall own a beneficial interest in the Creditor Trust Assets equal in proportion to the Pro Rata share of such Beneficiary's Allowed Claim in accordance with the Plan.

6.4    Evidence of Beneficial Interest

Evidence of a beneficial interest in the Trust shall be evidenced in any manner whatsoever, except as maintained on the Claims List maintained by the Creditor Trustee and not by any certificate, security or receipt or in any other form.

6.5    Transfer of Beneficial Interest

An Assignment of a beneficial interest in the Trust shall not be effective until appropriate notification and proof thereof is submitted to the Trustee. The Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiary until receipt of proper notification and proof of assignment.  The Trustee may rely upon such proof without the requirement of any further investigation.  Any notice of a change of beneficial interest ownership shall be forwarded to the Trustee by registered or certified mail pursuant to the notice provisions set forth in **Section 14.10** hereof.  The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e).  The notice must clearly describe the interest to be transferred.  The Trustee may conclusively rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

6.6    Conflicting Claims

If any conflicting claims or demands are made or asserted with respect to a beneficial interest in the Trust, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of a beneficial interest in the Trust then the Trustee shall be entitled to refuse to comply with any such conflicting claims or demands.  In so refusing, the Trustee may elect to make no payment or distribution with respect to the beneficial interest that are the subject of the claims or demands involved, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall retain jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Trustee shall not be or become liable to any of such parties for his refusal to comply with any of such conflicting claims or demands, nor shall the Trustee be liable for interest on any funds that he may so withhold.  The Trustee shall be entitled to refuse to act until either:  (a) the rights of the competing claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (b) all differences have been resolved by a valid written agreement among all of such parties and the Trustee.

## ARTICLE VII
## PROVISIONS REGARDING DISTRIBUTIONS

7.1     Timing and Methods

7.1.1     Generally.  The Trustee, on behalf of the Trust, or such other entity as may be designated by the Trustee, will make distributions to the Beneficiaries as set forth in, and as required by, this Agreement, the Plan and the Confirmation Order.  Unless the entity or person receiving a payment agrees otherwise, the Trustee, in its sole discretion, will make payment in cash from the Trust by check or by wire transfer.

7.1.2     Allocation and Priority.  After payment of all unpaid Trust Expenses, and maintenance of prudent reserves, the Creditor Trustee shall distribute Trust proceeds as follows: (a) first to holders of Allowed Administrative Claims, pro rata; (b) second, to holders of Allowed Class 1 Priority Claims and Allowed Class 2 Priority Tax Claims, pro rata; and (c) third, to holders of Allowed Class 4 General Unsecured Claims, pro rata.  The Trustee may withhold from amounts distributable to any entity any and all amounts, determined in the Trustee's reasonable discretion to be required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof, or to otherwise facilitate the administration of the Trust.

7.1.3     Claims List.  At least ten (10) days prior to the Effective Date, the Debtors will deliver to the Trustee a list of all claims scheduled by the Debtors and/or filed against the Debtors as of such date, the addresses of all such holders as of a record date that is not more than fifteen (15) days prior to the date of the list, the designation and amount of each such claim as disputed or not disputed, fixed or contingent and liquidated or unliquidated, and, to the extent ascertainable from the Debtors' books and records, the Employer or Taxpayer Identification Number as assigned by the IRS for each holder (the "*Claims List*").  The Trustee will utilize the Claims List in calculating and making distributions from the Trust as provided herein; provided, however, that the Claims List shall be adjusted from time to time by the Trustee as necessary to maintain its accuracy.  The Trustee shall also revise the Claims List from time to time upon receipt of notice from a Beneficiary of a change of address or stating that its claim has been transferred to a new Beneficiary, that the new Beneficiary has complied with any applicable provisions of Bankruptcy Rule 3001(e) (and providing evidence thereof) and setting forth the name and address of such new Beneficiary.  Nothing herein shall impair or otherwise affect the Trustee's right to object to the Allowance of Claims as provided in **Section 8.1**.

7.2     Delivery of Distributions

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to holders of record of Trust Interests shall be made at the address of each such holder set forth on the Claims List.

7.3     Post-Petition Interest on Claims

Except as expressly provided in the Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or as

13

required by applicable bankruptcy law, post-petition interest will not accrue on account of any claim and the Trustee will not distribute post-petition interest on account of any claim.

7.4     Undeliverable Distributions

If any distribution to a Beneficiary is returned to the Trustee as undeliverable, no further distributions shall be made to such Beneficiary, unless the Trustee is notified in writing of the Beneficiary's current address. Upon receipt of the notification, the Trustee will remit all missed distributions to the Beneficiary without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Confirmation Date of the Plan. If a claim is not made within that time, all unclaimed distributions will revert to the Trust and be distributed pro rata to the remaining Beneficiaries of the Trust according to the priorities set forth in this Agreement. Nothing contained in the Plan, the Confirmation Order or this Agreement shall require the Trustee to attempt to locate any Beneficiary.

7.5     Lapsed Distributions

Any distribution that has not cleared within ninety (90) days of the date of the distribution will lapse. With respect to any lapsed distributions, the lapsed distribution will revert to the Trust and be distributed to the remaining Beneficiaries of the Trust according to the priorities set forth in this Agreement.

7.6     Compliance with Tax Requirements/Allocation

To the extent applicable, the Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan and the Confirmation Order shall be subject to such withholding and reporting requirements. For tax purposes, distributions made to Beneficiaries will be allocated first to the principal amount of such claims.

7.7     Distributions

Whenever any payment of a fraction of a dollar under this Agreement, the Plan or the Confirmation Order would otherwise be called for, the actual payment made may reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Trustee shall not be required to make any interim distribution of less than Fifty Dollars ($50) to any Beneficiary. To the extent that any interim distribution is not paid to a Beneficiary on the grounds that it amounts to less than Fifty Dollars ($50), the amount of such withheld distribution shall be reserved for addition to any future distribution or as the final distribution to such Beneficiary, and may be made at that time if the total distribution is at least $50.

7.8     Setoffs

The Trustee may, pursuant to the Bankruptcy Code or applicable non-bankruptcy law, set off against any distribution due a Beneficiary, the claims, rights and causes of action of any nature that the Trust may hold against the holder of such claims that neither the failure to effect such a setoff nor the allowance of any claim shall constitute a waiver or release by the Trust, the

14

Debtors or the Estates of any such claims, rights and causes of action that they may possess against such holder.

7.9     Preservation of Debtors' Subordination Rights

All subordination rights of the Debtors or their Estates of the claims of Beneficiaries remain valid and enforceable by the Trust, unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise, and may be asserted by the Trustee as necessary or appropriate.

## ARTICLE VIII
## PROCEDURES FOR RESOLUTION OF DISPUTED,
## CONTINGENT AND UNLIQUIDATED CLAIMS

8.1     Objections to Claims; Prosecution of Disputed Claims

The Trustee, on behalf of the Trust, may file objections to claims, even if such claims were scheduled by the Debtors as undisputed, liquidated and non-contingent.  The Trustee shall have the authority to file, settle, compromise or withdraw any objections to claims.  Nothing herein or in the Plan shall limit or otherwise affect the right of any party-in-interest to object to any claim under section 502(a) of the Bankruptcy Code.

8.2     Estimation of Claims

The Trustee may request that the Bankruptcy Court estimate any contingent or disputed claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors, the Committee or the Trustee previously have objected to such claim.  The Bankruptcy Court retains jurisdiction to estimate any claim.  Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or disputed claim, the amount so estimated shall constitute the maximum allowed amount of such claim.  If the estimated amount constitutes a maximum limitation on the amount of such claim, the Trust may pursue supplementary proceedings to object to the allowance of such claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.3     Disputed Claims

8.3.1   If the Trustee or other party-in-interest has objected to a claim, distributions will be withheld only with respect to the amount actually in dispute, and such objection shall not affect payments or distributions under the Plan on the undisputed portion of the claim.

8.3.2   The Trustee shall maintain, a reserve for any distributable amounts required to be set aside on account of disputed claims (the "*Disputed Claims Reserve*").

8.3.3   Once a disputed claim becomes an Allowed claim, the Trustee shall distribute to the holder thereof, from the Disputed Claims Reserve, such amount of Creditor Trust Assets as would have been distributed to such holder if the allowed portion of its claim had

15

been an allowed claim on the Confirmation Date. If a disputed claim becomes disallowed, in whole or part, the Trustee shall reallocate the disallowed amount previously set aside in the Disputed Claims Reserve among the Beneficiaries.

## ARTICLE IX
## LIABILITY AND EXCULPATION PROVISIONS

9.1     Standard of Liability

In no event shall the Trustee, the Trust, or their respective professionals, non-professionals or representatives, be held personally liable for any claim asserted against the Trust, the Creditor Trustee, or any of their professionals, non-professionals or representatives. Specifically, they shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith. Notwithstanding the foregoing, the Trustee, or any of his Professionals, Non-Professionals or representatives may be held personally liable to the extent that the action or omission is gross negligence, willful misconduct, fraud or, solely in the case of the Trustee, breach of fiduciary duty other than negligence. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, fraud or a breach of fiduciary duty.

9.2     Reliance by Trustee

Except as otherwise provided in **Article III** hereof:

(a)     the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order or other paper or document reasonably believed by him or her to be genuine and to have been signed or presented by the proper party or parties except as otherwise provided in the Plan or the Confirmation Order; and

(a)     the Trustee shall not be liable for any action reasonably taken or not taken by him or her in accordance with the advice of a Professional retained pursuant to **Article XI**, and persons dealing with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Agreement, and he shall have no personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date are determined to be solely due to the Trustee's gross negligence, willful misconduct, fraud or breach of fiduciary duty.

9.3     Exculpation

9.3.1    From and after the Effective Date, the Trustee and his Professionals, Non-Professionals and representatives shall be and hereby are exculpated from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Agreement, the Plan, the Confirmation Order or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions after the Effective Date due to their gross negligence, willful misconduct, fraud or, solely in the case of the Trustee, breach of fiduciary duty.

16

9.3.2   No holder of a claim or other party-in-interest will be permitted to pursue any claim or cause of action against the Trustee or his Professionals, Non-Professionals or representatives for making payments in accordance with the Plan or the Confirmation Order or for implementing the provisions of the Plan or the Confirmation Order, except for gross negligence, willful misconduct or fraud or, solely in the case of the Trustee, a breach of fiduciary duty.

9.4   <u>Indemnification</u>

The Trust shall indemnify, defend and hold harmless the Trustee and his respective Professionals, Non-Professionals and representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including reasonable attorneys' fees and expenses) occurring after the Effective Date, other than to the extent of gross negligence, willful misconduct or fraud or, solely in the case of the Trustee, breach of fiduciary duty to the fullest extent permitted by applicable law.

## ARTICLE X
## ADMINISTRATION

10.1   <u>Purpose of the Trust</u>

The Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  Accordingly, the Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Creditor Trust Assets, make timely distributions to the Beneficiaries and not unduly prolong the duration of the Trust.

10.2   <u>Books and Records</u>

10.2.1   <u>Transfer of Books and Records</u>.  Immediately following the Effective Date, the Debtors shall cause all of the Debtors' books and records to be transferred to the Trust, whether such books and records are in the possession of the Debtors or third parties.

10.2.2   <u>Maintenance of Books and Records</u>.  The Trustee shall maintain, the books and records relating to the assets and income of the Trust and the payment of expenses of and liabilities of, claims against or assumed by, the Trust in such detail and for such period of time as the Trustee determines may be necessary. Except as otherwise provided herein, in the Plan, or in the Confirmation Order, nothing in this Agreement requires the Trust to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for making any payment or distribution of the Trust Assets.  Subject to all applicable privileges, the Beneficiaries shall have the right, upon thirty (30) days' prior written notice delivered to the Trustee, to request a reasonable inspection of such books and records; <u>provided</u>, <u>however</u>, that, if so requested, such Beneficiary shall:   (a) make such other reasonable arrangements as requested by the Trustee; and (b) bear all costs and expenses of such inspection.

10.2.3   <u>Destruction of Books and Records</u>.  The Trustee shall be permitted, without further order of the Court, to destroy any books and records deemed unnecessary to the

17

administration of the Trust, on or after five (5) years of the Effective Date. All other books and records of the Debtors may be destroyed by the Trustee, without further order of the Court, on or after five (5) years of the termination of the Trust.

        10.2.4 <u>Quarterly Reports</u>. Within thirty (30) days after the conclusion of every calendar quarter during the term of this Agreement following the Effective Date, the Trustee shall file a Quarterly Report with the Bankruptcy Court and provide copies (via e-mail or facsimile) to the Creditor Advisory Board. The Quarterly Report shall set forth: (a) all distributions to Beneficiaries during the calendar quarter; (b) a summary of the Trust deposits and disbursements during the calendar quarter; and (c) a summary of the Creditor Trust Assets.

10.3    <u>Security Interests</u>

    The Trustee, his respective Professionals and Non-Professionals and the U.S. Trustee are hereby granted a first-priority lien on, and security interest in, the Creditor Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, to be retained by or otherwise due hereunder to each of the above. The Trustee shall cause the Trust to take such actions and execute such documents as is deemed appropriate to perfect the security interests granted hereunder. The Trustee is authorized to execute and deliver all documents to accomplish the purposes of this Agreement, the Plan and the Confirmation Order.

10.4    <u>Compliance with Laws</u>

    Any and all distributions of Creditor Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

**ARTICLE XI**
**PROFESSIONALS AND NON-PROFESSIONALS**

11.1    <u>Retention of Professionals and Non-Professionals</u>

        11.1.1 Without any further approval by any court, the Trustee shall have the right to retain professionals and/or non-professionals including, legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other professionals as appropriate (collectively, the "*Professionals*"), or such employees, independent contractors or other agents ("*Non-Professionals*") as is deemed appropriate. Such Professionals or Non-Professionals shall be compensated in accordance with **Section 11.3** hereof. The Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, professionals or non-professionals retained by any party in the Cases for efficiency.

11.2    <u>Trustee's Legal Counsel</u>

    The Trustee has chosen to retain Freeborn & Peters LLP as his counsel. Such retention is made pursuant to this **Article XI** without any further approval by any court. Freeborn & Peters LLP is a Professional as that term is used herein, and shall be compensated in accordance with **Section 11.3** hereof.

18

### 11.3     Compensation of Professionals and Non-Professionals

Professionals and Non-Professionals shall submit periodic invoices to the Trustee for their fees and expenses incurred.  The Trustee may pay the reasonable fees and expenses of such Professionals and Non-Professionals as an expense of the Trust without application to the Bankruptcy Court, subject to the following procedure:  each Professional and Non-Professional shall serve its fee invoice (which shall contain detailed time entries) upon the Creditor Trustee no more frequently than once a month.  The Trustee shall have until fourteen (14) days after its receipt of an invoice to review such invoice and deliver to the applicable Professional or Non-Professional, any objections thereto.  Any objection to an invoice must:  (a) be in writing; and (b) set forth the precise nature of the objection and the amount of objectionable fees and expenses at issue.  If no objection is timely served in respect of an invoice, then the Professional or Non-Professional shall be entitled to prompt payment from the Trust on such invoice.  If a timely objection is filed, the Professional or Non-Professional shall be entitled to payment from the Trust of only that portion of the invoice that is not the subject of the objection, and the Trustee and the affected Professional or Non-Professional may attempt to resolve on a consensual basis that portion of the invoice that is the subject of the objection.  If the parties are unable to reach a resolution of the objection, the affected Professional or Non-Professional may file a request for payment of the disputed amount with the Bankruptcy Court and serve such request on the Trustee on regular notice.

## ARTICLE XII
## TAXES

### 12.1     Tax Returns and Payments

The Trustee will be responsible for:  (a) the preparation and timely filing of all required federal, state and local tax returns for the Trust; and (b) the timely payment of any taxes shown on such returns as owing by the Trust from the applicable Creditor Trust Assets.  The Trustee will retain all tax returns and supporting documentation until the expiration of the applicable statute of limitations.  The Trustee may request an expedited determination of the taxes owed by the Trust under section 505(b) of the Bankruptcy Code for any tax return for which such determination may be requested.  The Trustee will file tax returns pursuant to Treas. Reg. § 1.671-4(a) on the basis that the Trust is a grantor trust that is a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and related regulations.

### 12.2     Disputed Claims Reserve

The Trustee will file, if necessary, all applicable tax and other returns and statements for the Disputed Claims Reserve in accordance with the requirements for discrete trusts taxed pursuant to section 641, *et seq.* of the Internal Revenue Code or as "disputed ownership funds" within the meaning of Treas. Reg. § 1.468B-9(b)(1), as applicable.  In addition, the Trustee will pay from the applicable Creditor Trust Assets on a current basis any taxes owed on any net income or gain of such Disputed Claims Reserve.

### 12.3     Tax Withholding and Reporting; Liability for Taxes

Case 2:13-bk-09026-BKM    Doc 1406    Filed 04/13/15    Entered 04/14/15 08:20:03    Desc
Main Document      Page 30 of 35

The Trustee (and his designees) will comply with all applicable tax withholding and reporting requirements imposed on him or on the Trust by any governmental unit. Each person or entity receiving (or deemed to receive) a distribution pursuant to the Plan will have sole responsibility for the payment of any taxes imposed on it.

## ARTICLE XIII
## TERMINATION OF THE TRUST

### 13.1    Duration and Extension

The Trust will terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Trust for a finite period if it is necessary to the liquidating purpose thereof. Multiple extensions may be obtained. Prior to requesting any such extension, the Trustee must receive an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a grantor trust for federal income tax purposes.

### 13.2    Termination Upon Distribution of Assets

The Trust will terminate and the Trustee will have no additional responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in **Section 13.4** hereof, upon the latest of: (a) the payment of all costs, expenses and obligations incurred in connection with administering the Trust; (b) the distribution of all remaining Creditor Trust Assets; (c) the closure or dismissal of the cases; and (d) the completion of any necessary or appropriate reports, tax returns or other documentation determined by the Trustee, in his reasonable discretion, to be necessary, appropriate or desirable, in each case pursuant to and in accordance with the Plan, the Confirmation Order and this Agreement.

### 13.3    Diligent Administration

The Trustee shall: (a) not unduly prolong the duration of the Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all claims and causes of action that constitute Creditor Trust Assets; (c) effect the distribution of the Creditor Trust Assets to the Beneficiaries in accordance with the terms hereof; and (d) endeavor to terminate the Trust as soon as practicable and without derogating from the Plan or this Agreement. Prior to and upon termination of the Trust, the Trustee shall distribute the Creditor Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and the Confirmation Order, subject to the provisions set forth herein. If any distributions of the Trust are not duly claimed, the Trustee shall dispose of all such distributions in accordance with the Plan, the Confirmation Order and this Agreement.

### 13.4    Other Termination Procedures

Upon termination of this Trust, the Trustee will file a written notice with the Bankruptcy Court disclosing the Trust's termination. Notwithstanding the foregoing, after the termination of the Trust, the Trustee will have the power to exercise all the rights, powers and privileges herein

20

conferred solely for the purpose of liquidating and winding up the affairs of the Trust. Except as otherwise provided under the Plan or this Agreement, for a period of five (5) years after the distribution of all of the Creditor Trust Assets, the Trustee will retain the books, records and files that have been delivered to or created by the Trustee, at which time he may dispose of such books, records and files in any manner that he deems appropriate. Except as otherwise specifically provided herein, after termination of this Agreement, the Trustee shall have no further duties or obligations hereunder.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

### 14.1    Cooperation

The Debtors will provide the Trustee with access to or copies of such of the Debtors' books and records as the Trustee shall reasonably require for the purpose of performing his duties and exercising his powers under this Agreement, the Plan or the Confirmation Order. All third parties in possession of the Debtors' books and records shall provide the Trustee with similar cooperation, and the Trustee shall have the right to seek appropriate relief from the Bankruptcy Court or any other court with jurisdiction over the matter to the extent that a third party unreasonably refuses to cooperate with the Trustee's requests.

### 14.2    Payment of Statutory Fees

Following the transfer of all Creditor Trust Assets to the Trust on and after the Effective Date and through the date that a final decree is entered in the Cases, the Trust shall be obligated to pay any U.S. Trustee fees associated with the Cases pursuant to 28 U.S.C. § 1930(a)(6).

### 14.3    Prevailing Party

In the event of a dispute regarding the provisions of this Agreement or the enforcement thereof, the prevailing party shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

### 14.4    Implied Authority of the Trustee

No person dealing with the Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of Creditor Trust Assets.

### 14.5    Governing Law; Submission to Jurisdiction; Service of Process

This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona, without giving effect to rules governing the conflict of law. The Bankruptcy Court will have exclusive jurisdiction over any dispute arising out of or in connection with the transactions contemplated by this Agreement. The parties to this Agreement consent to the exclusive jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) and irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such dispute in the Bankruptcy

21

Court or that any such dispute brought in the Bankruptcy Court has been brought in an inconvenient forum. This Agreement is subject to any order or act of the Bankruptcy Court applicable hereto. Process may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court. Without limiting the foregoing, each party to this Agreement agrees that service of process on that party may be made upon the designated person or entity at the address provided in **Section 14.10** hereof and will be deemed to be effective service of process on that party.

14.6    <u>Severability</u>

If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

14.7    <u>Notices</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered via personal delivery, first-class mail (unless registered or certified mail is required), facsimile or electronic mail to the addresses as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**<u>Trustee</u>**:

> Dale C. Schian, Esq.
> SCHIAN WALKER, P.L.C.
> 1850 North Central Avenue, #900
> Phoenix, AZ  85004-4531
> Telephone:  602.277.1501
> Facsimile:  602.297.9633
> E-Mail:  dschian@swazlaw.com
>
> with a copy to:
>
> Richard S. Lauter, Esq.
> FREEBORN & PETERS LLP
> 311 South Wacker Drive, Suite 3000
> Chicago, IL 60606-6677
> Telephone:  312.360.6000
> Facsimile:  312.360.6520
> E-Mail:  rlauter@freeborn.com

**<u>Debtors</u>**:

> Michael McGrath, Esq.
> MESCH, CLARK & ROTHSCHILD, P.C.

22

259 North Meyer Avenue
Tucson, AZ 85701
Telephone: 520.624.8886
Facsimile: 520.798.1037
E-Mail: mmcgrath@mcrazlaw.com
ecfbk@mcrazlaw.com

**Creditor Advisory Board**:

[TBD]

Notices if to a Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on the Claims List.

14.8    Headings

The Article and Section headings contained in the Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

14.9    Counterparts and Facsimile Signatures

This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

14.10   Amendment or Waiver

Any substantive provision of this Agreement may be materially amended or waived by the Trustee, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; provided, however, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Trust as a "grantor trust," if applicable. Technical or non-material amendments to or waivers of portions of this Agreement may be made by the Trustee without the approval of the Bankruptcy Court, as necessary, to clarify this Agreement or to enable the Trustee to effectuate the terms of this Agreement.

14.11   Intervention

On the Effective Date, and without requirement of obtaining any order of the Bankruptcy Court, the Trustee shall be deemed to have intervened or substituted as plaintiff, moving, defendant or additional party, as appropriate, in any adversary proceeding, contested matter, claim objection or other motion that was filed prior to the effective date, where the subject matter of such action involves any disputed claim, any Creditor Trust Asset or any claim, to the extent such claim impacts the Creditor Trust Assets.

23

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**CREDITOR TRUSTEE**

By: _____
_____, not individually, but
solely as trustee of the Trust

**PRM FAMILY HOLDING COMPANY, L.L.C., ET AL.**

By: _____
Its _____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____
_____
Its Chair

24